## Beaty v. Commonwealth.

(Decided October 12, 1910.)

## Appeal from Clinton Circuit Court.

1.  Homicide—Killing of Son by Father—Evidence—Competency— Statement of Deceased in Presence of Accused.—On the trial of D. T. Beatty, indicted for murder and convicted of voluntary manslaughter for killing his son, T. G. Beatty. evidence was incompetent given by a witness, stating that when he arrived at Beatty's house after the shooting but before T. G. Beatty's death, he said to T. G. Beatty in the presence of his father: "Harve, you certainly will not let this pass. I want you to prosecute my father, and I told him I would if no one else would not," as it does not state any fact or circumstance connected with the difficulty, nor is there anything in it that called for an answer from appellant although it was said in his presence.

2.  Same.—On the trial the court erred to appellant's prejudice in directing the jury not to consider the statement in the dying

declaration of T. G. Beatty, as proved by C. P. Huff, to-wit: "I think it was no accident," as it tended to show that T. G. Beatty was not certain that his father intentionally shot him.

E. BERTRAM, JOE BERTRAM and JESSE W. EWING for appellant.

JAMES BREATHITT. Attorney General, and TOM B. McGREGOR, Asst. Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

Appellant was tried under an indictment charging him with the murder of his son, T. G. Beaty, and convicted of the crime of voluntary manslaughter and sentenced for a term of fifteen years in the penitentiary. A reversal was sought mainly because of errors in the instructions given, and this necessitates a statement of the substance of the evidence introduced. The following facts appear without contradiction. Appellant was fifty-seven years of age; had been afflicted with stomach trouble three or four years, and treated by physicians who testified that he was too weak to do manual labor. The physician who treated him a few hours after the killing stated that his right eye was in a bad condition; that the upper lid of the eye was cut through and had dropped and closed the eye; that his face was badly bruised and swollen. The shooting occurred at the home in which his son, now deceased, lived with his family. Appellant, however, had reserved a room in the house for his own use, in which he had his furniture and which he occupied a considerable portion of the time. Appellant owned the land upon which the house was situated and upon which there were several other tenants. He also had another farm upon which his family lived, and where he stayed the major part of his time. He arrived at his son's on the evening before the trouble in the morning, and occupied the reserved room during the night. He arose early next morning intending to do some surveying, went to the front porch and took a seat in a chair, and his son was seated on the railing of the porch. While thus situated, Della Brown and her mother came and passed through the house into the kitchen where the son's wife was cooking breakfast. In a few minutes Della Brown returned from the kitchen with a bridle in her hand. As to what took place after this there is conflict in the testimony. The first witness for the Commonwealth, Annie Belle Beaty, the widow of the

deceased, testified in substance that appellant reached out his hand to take the bridle, saying it was his, and at the same time drew his pistol to shoot her; then put it back into his pocket and sat down. This witness stated that at this time she and Mrs. Brown walked out onto the porch, and she, the witness, said to appellant, "You ought not to raise fusses with the neighboring women when they are visiting here;" that appellant then called her a bad name and drew his pistol; that her husband jumped and caught the pistol and told him not to do that. This witness did not hear the pistol fired, but says that her husband obtained the pistol and threw it into the yard, and she heard him say to his father, "Pa, you have shot and killed me." She testified that appellant then drew his knife and started at her; that she hit him several times with a stick about the size of a chair post and knocked him down; that the stick flew out of her hands and she continued to fight him with her feet and hands until she heard her husband call her to get him some water.

Della Brown and her mother, witnesses for the Commonwealth, in substance, testified that Della Brown started to catch a horse to go to the store, that she had a bridle in her hand and appellant claimed it when she went out onto the porch; that at the moment he did this the mother and wife of the deceased arrived on the porch, and Mrs. Brown asked appellant what he had against her child that he wanted to kill her; that he said he had nothing, and asked her if she was going to get mad at him. They further stated that at this time Nannie Belle Beaty asked appellant why he always raised fusses with the neighbor women who came there, and he called her a bad name; that she, Nannie Belle Beaty, drew a stick and started to strike appellant while he was still sitting; that he jumped and threw up his right hand to ward off the blow and caught at her with his left hand and started to draw his pistol; that his son, T. G. Beaty, jumped and caught him. These two witnesses stated that they ran at this time, and as they were going around the corner of the house, heard the pistol fire. Appellant proved by several witnesses that appellant said to them that he made a mistake,—that he intended to shoot the deceased's wife and shot "Dock," his son. The Commonwealth introduced what purported to be two dying declarations of T. G. Beaty. The first was by Westmoreland, a tenant on the farm, which it

is claimed was made about an hour after the shooting. The statement is as follows:

"I heard a racket out on the portico between pa and Della Brown, and I went out to settle it. Pa drew his pistol, and I grabbed him by the wrist and it shocked me so I turned him loose, and pa said, 'G—— D—— you I come mighty near shooting you last night,' and shot me."

We copy the testimony of C. P. Huff in full as to the second alleged dying declaration of T. G. Beaty:

"I went to the home of T. G. Beaty about sundown on the day he was shot; I went with Mr. P. A. Madison, sheriff of Clinton county. T. G. Beaty said he was bound to die and could not get well. P. A. Madison told T. G. Beaty that the county judge had told us to take a statement about the matter, and then he asked T. G. Beaty how it happened, and T. G. Beaty replied: 'In the beginning pa drew his pistol on my wife, Nannie Belle Beaty, and I grabbed him, and in the scuffle he shot me; it was no accident.' T. G. Beaty's mother then said: 'Deck, you know your pa never aimed to shoot you.' Then T. G. Beaty said: 'I think it was no accident.' Then he said: 'Pa said, I come G— D— nigh shooting you last night, and he shot me; he was trying to shoot me when he did.' At this time some of the persons present began to ask him some questions, and Mr. Madison called me out and said he could not take the statement in that way and that we would have to stop, and we stopped and did not take any more. I wrote down what T. G. Beaty said and read it over to him, and he said it was correct, but that he was too weak to sign it, and he did not sign it."

At the close of Huff's testimony the court admonished the jury not to consider the statement of T. G. Beaty: "I think it was no accident."

The substance of appellant's testimony is that when Della Brown came out onto the porch with the bridle in her hand, he said to her that it was his, and asked her to give it to him; that he said it in fun; that he did not draw nor attempt to draw his pistol upon her; that about this time his son's wife and Mrs. Brown arrived on the porch, and Mrs. Brown made the statement to him heretofore related and to which he answered that he was in fun. Appellant stated that at this time he started to get up from his chair and go into his room to get some papers to be used in surveying that day; that at

the instant he started to arise, his son's wife asked him why he was bothering her neighbor women, and began to strike him immediately with a stick, and knocked him down and injured him as before related by the physician; that during the assault upon him he attempted to draw his pistol; that his son grabbed it and his hand, and undertook to take it away from him; that in the scuffle the pistol fired and the ball struck his son; that the pistol was discharged without any intention whatever upon his part. He stated that he drew the pistol for the purpose of frightening his son's wife who was assaulting him; that he did not intend to use it upon her, unless it became necessary to save his life.'

There is nothing in the record showing that there had ever been any ill feeling between appellant and his son.

From this statement of facts, it appears that the commonwealth's theory is that the killing by appellant of his son was felonious and without justification, and that it is appellant's theory that he killed his son accidentally when attempting to use his pistol in his necessary self-defense against the assault of his son's wife.

Appellant complains of instructions numbers 2, 3, 4 and 5. Instruction No. 2 is erroneous in so far as it relates to the manner in which appellant handled and discharged the pistol. He was entitled to the ordinary instruction on voluntary manslaughter. On another trial, the court should reform instruction No. 2 so as it will be as follows:

"If the jury shall believe from the evidence beyond a reasonable doubt that in this county and before the finding of the indictment the defendant wilfully and feloniously in sudden heat of passion or in sudden affray and without previous malice, shot at and killed the deceased with a pistol, or if you shall believe from the evidence beyond a reasonable doubt that the defendant, D. T. Beaty, in this county, and before the finding of the indictment wilfully, feloniously and without previous malice, shot at Nannie Belle Beaty with a pistol, or was aiming to shoot her, and this was not in his necessary or apparently necessary self-defense, and the shot struck the deceased, T. G. Beaty, although same was not intended for him, you will find the defendant guilty of voluntary manslaughter, and fix his punishment at confinement in the penitentiary for a period of not less than two nor more than twenty-one years, in your discretion."

Instruction No. 3, which is upon involuntary manslaughter, is as follows:

''If you shall believe from the evidence beyond a reasonable doubt, that in this county and before the finding of the indictment, the defendant, D. T. Beaty, willfully, not in his necessary or reasonably apparent necessary self-defense, drew or attempted to draw a pistol upon Nannie Belle Beaty, but with no intention of shooting and killing her or shooting at her with such intent, and that while doing so the deceased. T. G. Beaty, interfered for the purpose of preventing trouble or stopping the trouble then in progress between the defendant and Nannie Belle Beaty, and that while so attempting to disarm the said defendant, or to stop the difficulty between them, the pistol then in the hands of the defendant, was unintentionally discharged by the defendant and the deceased thereby shot and killed, and that the defendant had reasonable grounds to believe and did believe that there was no danger in handling the said pistol as he did, and that said killing resulted from the careless use of said weapon by defendant, then you should find him guilty of involuntary manslaughter and fix his punishment at a fine and imprisonment in the county jail, in your discretion.''

Under the facts of this case, there is nothing upon which to base an instruction for involuntary manslaughter. The case made by the testimony for the commonwealth, is one of murder or voluntary manslaughter, and as presented by the defendant, is one of self-defense or accidental shooting. If he drew the pistol only to frighten Nannie Belle Beaty and cause her to desist beating him with the stick, and his son grabbed the pistol and in the scuffle it was accidentally discharged, appellant should not be charged with the careless or negligent handling of the pistol in the scuffle.

Instruction No. 4 is with reference to the degrees of the offense, and directs the jury to find him guilty of the lesser if they have any doubt as to which he is guilty of. This instruction is subject to the same criticism as No. 3, and on another trial the court should give in lieu thereof the following:

''If you shall believe from the evidence beyond a reasonable doubt that the defendant has been proven guilty, but have a reasonable doubt from the evidence as to whether his crime be willful murder as charged in the

indictment or the lower offense of voluntary man-
slaughter included therein, then the jury should give the
defendant the benefit of such doubt and find him guilty
of voluntary manslaughter.''

Instruction No. 5 is as follows:

''Although you may believe from the evidence be-
yond a reasonable doubt that the defendant, D. T.
Beaty, shot and killed the deceased, T. G. Beaty, yet if
you shall further believe from the evidence 'that at the
time the pistol was discharged which resulted in the
death of T. G. Beaty, the defendant in good faith be-
lieved and had reasonable grounds to believe that he
was in danger of losing his life or suffering great bodily
harm at the hands of Nannie Belle Beaty, and there
appeared to the defendant exercising a reasonable judg-
ment at the time and under the circumstances no other
safe, apparent and available means of averting the
impending real or to him apparent danger without re-
treating, then he had the right to use such force as was
reasonably necessary to protect himself from such im-
pending injury or harm, and if so acting drew the pistol
and the same was without carelessness on his part acci-
dentally discharged, thereby killing T. G. Beaty, then
the defendant was acting in self-defense, and you will
find him not guilty.''

This instruction was very prejudicial to appellant.
Under it, the jury could not acquit him although they be-
lieved he had reasonable grounds to and did believe that
he was in danger of losing his life or suffering great
bodily harm at the hands of Nannie Belle Beaty, and
that he believed that he had no reasonable means to avert
the danger except by using the pistol in his defense, for
the court told the jury at the close of the instruction, in
effect, that they must also believe that appellant handled
the pistol carefully before they could acquit him. On an-
other trial, in lieu of this instruction, the court should
give the following:

''Although the jury may believe from the evidence
beyond a reasonable doubt that the defendant, D. T.
Beaty, shot and killed T. G. Beaty, yet, if you shall fur-
ther believe from the evidence that at the time the pistol
was discharged, which resulted in the death of said T.
G. Beaty, the defendant, in good faith, believed and had
reasonable grounds to believe that he was in danger of
losing his life or suffering great bodily harm at the
hands of Nannie Belle Beaty, and there appeared to

the defendant, exercising a reasonable judgment, at the time and under the circumstances, no other reasonable means of averting the impending, or, to him, apparent danger, then he had the right to use such force as was to him apparently necessary to protect himself from such impending injury or harm, and if so acting, drew the pistol and shot at Nannie Belle Beaty and missed her and killed T. G. Beaty, then you will find him not guilty. Or, if the jury believe from the evidence that defendant drew the pistol with no intention of shooting Nannie Belle Beaty, or shooting at her, and the pistol was accidentally and unintentionally discharged. while defendant was not endeavoring to shoot Nannie Belle Beaty or T. G. Beaty, he should be acquitted."

The witness Westmoreland further testified that when he arrived at Beaty's house, he said to T. G. Beaty in the presence of appellant:

" 'Harve, you certainly will not let this pass. I want you to prosecute my father.' And I told him I would if no one else would not."

This was objected to by appellant, and the court overruled the objections. This was incompetent testimony. It does not pretend to give any fact or circumstance connected with the difficulty, nor is there anything in it that called for an answer from appellant, although it was said in his presence. We are also of the opinion that the court erred to appellant's prejudice in directing the jury not to consider the sentence in the dying declaration of T. G. Beaty, as proved by C. P. Huff, to-wit: "I think it was no accident." Appellant was entitled to have this go to the jury. It tended to show that T. G. Beaty was not certain that his father intentionally shot him. In the case of Coyle v. Commonwealth, 122 Ky., 781; 29 Ky. Law Rep. 340, this court, in discussing the admissibility of dying declarations as evidence, said that if such a statement is introduced the defendant should be permitted to introduce any statement made afterwards by the deceased, for the purpose of lessening or destroying the force and effect thereof. If it is proper to show such statements made afterwards, it is certainly proper to prove a statement made as a part of and in connection with the dying declaration.

For these reasons, the judgment of the lower court is reversed, and remanded for further proceedings consistent herewith.