## McGeorge v. Commonwealth.

(Decided November 24, 1911.)

### Appeal from Bell Circuit Court.

1. Murder, Indictment for—Conviction of Manslaughter—Killing of Wife—Evidence of Ill-treatment—Competency of.—Upon the trial of appellant for the killing of his wife, the admission of evidence as to the ill-treatment by him of his wife, and of bruises found, after her death, upon her body, and the evidence of the physician as to what appellant told him following the homicide, was competent, serving as it did to illustrate the state of feeling toward his wife at the time of the killing, as well as the motive with which his act in shooting her might have been done.

2. Conflicting Evidence—Instructions.—While the evidence was conflicting, it was all properly allowed to go to the jury, and the instructions were in substantially correct language upon murder, voluntary manslaughter, involuntary manslaughter, and accidental killing.

A. G. PATTERSON for appellant.

JAS. BREATHITT, Attorney General and TOM B. McGREGOR, Assistant Attorney General for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Appellant was tried and convicted of voluntary manslaughter in the court below, under an indictment for the murder of his wife, Tilda McGeorge. His guilt having been declared by verdict of a jury, the judgment of the court fixed his punishment at indeterminate confinement in the penitentiary not less than two, nor more than twenty-one years.

He insists that his conviction was not fairly attained; that he should have been granted a new trial by the circuit court; and that errors committed by that court during his trial, and its error in refusing him a new trial, entitle him to a reversal of the judgment appealed from.

Appellant's wife was killed by a bullet shot from a pistol in his hands. The bullet passed through her hand, struck her head and entered the brain, producing death almost immediately. Only four persons besides the victim were present at the time of the homicide, appellant, his brothers, Elihu and Britt McGeorge, and his twelve year old niece, Abbie McGeorge. The latter was introduced as a witness by the Commonwealth, and ac-

cording to her testimony, deceased, by command of appellant, had, just before the shooting, commenced to prepare the noon meal for the family. In connection with the command to her to prepare the meal, appellant also ordered her to bring a bucket of water, but this duty the niece performed for her. When the niece returned with the bucket of water, appellant ordered his wife to bring the second bucket of water, and threatened that if she did not at once do so he would whip her with a rope hanging on plow gear close at hand. The niece also brought this bucket of water, and upon her return saw deceased get a pistol appellant had left on a table in the house, take it to appellant and ask him if it was loaded. He angrily jerked the pistol from her and apparently began to turn the cylinder and snap it. The pistol was then pointed in the direction of deceased. One of appellant's brothers warned him that the pistol was loaded, and while in appellant's hands it was discharged with the result already stated. Appellant and his brothers secured the attendance of some of the neighbors and a physician.

The niece and other witnesses testified that appellant's conduct toward his wife had, for several years before her death, been unkind; that he often indulged in abusive language to her and threatened her; and one witness stated that on one occasion he was seen to assault and beat her. One or more of the women by whom her body was prepared for burial, testified that they discovered thereon various welts and bruises of apparently recent infliction, that seemed to have been produced by a whipping, or beating.

Appellant complains of the admission by the court of the evidence with respect to his ill-treatment of his wife, the bruises found upon her body, and the testimony of the physician of what appellant told him following the homicide, as to the manner in which she met her death, insisting that this evidence was incompetent. We think the evidence referred to was all competent, as it served to illustrate the state of appellant's mind and feelings toward his wife at the time of the killing, and also the motive with which his act in shooting her was or might have been done. His statement to the physician was that his wife had come to him with the pistol which she had found upon a table in the house. While this testimony may not have been very material, it was clearly competent, as would have been any other statement or ex-

planation of the killing that might have been made by appellant immediately following the act, or at any subsequent time.

The account given of the killing by appellant and his two brothers was that deceased came to the door with the pistol while he was on the porch, and inquired of him whether it was loaded, at the time having it pointed toward him and snapping it; that he then took the pistol out of her hands and began to revolve the cylinder to see if it was loaded, in doing which it was accidentally discharged, the ball striking her in the hand and head and causing her death. Appellant and his brothers also testified that deceased was laughing when she came to the door with the pistol in her hand.

Appellant further testified that upon realizing that his wife had been killed he took steps to secure the attendance upon her of a physician and the women of the neighborhood. He admitted that he was not present at the funeral or burial of his wife, having gone to his father's in Tennessee, but explained that his absence was due to threats which his wife's brothers and family had made to take his life.

Other witnesses testified for appellant that his treatment of his wife was not unkind, as stated by some of the witnesses for the Commonwealth, and that he had never assaulted or beaten her. He and some of his witnesses contradicted various statements made by witnesses for the Commonwealth, and there were numerous contradictions of his witnesses by testimony introduced for the Commonwealth. Considered as a whole, the evidence was very conflicting and much of it of an unsatisfactory character, but we cannot sustain his contention that the verdict was wholly unsupported by the evidence, or that the court should have given a peremptory instruction directing his acquittal. In our opinion it was all properly allowed to go to the jury and we are not disposed to interfere with the finding manifested by their verdict.

We are further of opinion that appellant's complaint of the instructions is not well founded. They instructed the jury in substantially correct language upon murder, voluntary manslaughter, involuntary manslaughter, and accidental killing, as well as on the subjects of reasonable doubt and presumption of innocence. These aspects of the case should have all been submitted to the jury. If appellant wilfully, feloniously and with malice aforethought shot and killed his wife, he was guilty of murder.

If he shot and killed her without malice aforethought, but in sudden heat or passion, or by the reckless or grossly careless handling or discharge of the pistol, when he knew it was dangerous to life if used in the way he used it, he was guilty of voluntary manslaughter. If he was not reckless or grossly careless in handling the pistol, but intentionally pointed it at her, and in thus doing permitted it to be discharged, although believing it would not go off, nor intending to shoot her, and not having reason to apprehend that it would go off, he was guilty of involuntary manslaughter. On the other hand, if the shot that killed her was accidental and unintentional on the part of appellant, and not wilful and with malice aforethought as defined in the instruction as to murder, or the result of sudden heat and passion, or recklessness and carelessness as defined in the instruction on voluntary manslaughter, or of his intentional pointing the pistol at her as defined in the instruction on involuntary manslaughter, appellant should have been acquitted. Hunn v. Commonwealth, 143 Ky., 143; Ewing v. Commonwealth, 129 Ky., 237; Brown v. Commonwealth, 122 Ky., 626.

Being unable to find any error in the record by which the appellant was prevented from having a fair trial, it is our duty to allow the verdict to stand, and the judgment is, therefore, affirmed.