## Wayne (alias Wing) v. Commonwealth.

(Decided September 19, 1913).

## Appeal from Henry Circuit Court.

1. Homicide—Involuntary Manslaughter—Voluntary Manslaughter—Accidental and Unintentional Killing—Instructions.—It has been the uniform ruling of this court in cases where homicide is claimed to be accidental, and there is any evidence to justify it, that it is the duty of the trial court not only to give an instruction upon accidental and unintentional killing, but to give one based upon the reckless or grossly careless use of fire arms constituting voluntary manslaughter.

2. Homicide—Involuntary Manslaughter—Voluntary Manslaughter—Accidental Killing—Instructions.—Where the jury might very well have believed from the evidence that the killing was unintentional, but believe at the same time that appellant was so careless and reckless in handling the pistol that he ought to have been punished more severely than by a fine and jail sentence, under an involuntary manslaughter instruction the jury had no alternative except to adjudge him guilty of involuntary manslaughter, and thereby impose the small penalty of fine and imprisonment, or inflict the extreme penalty of life imprisonment, or death, and under the evidence and rule referred to, the failure to give an instruction upon voluntary manslaughter was error.

W. B. MOODY, MOODY & BARBOUR, W. P. THORNE and J. R. FEARS for appellant.

JAMES GARNETT, Attorney General, D. O. MYATT, Assistant Attorney General for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

Appellant was indicted in the Henry Circuit Court charged with the murder of Pryor Martin.

On his trial he was adjudged guilty, and sentenced to confinement in the penitentiary for life, and from that judgment he appeals.

The trial disclosed that they were both negro men, and worked for Mr. James Foree, in Henry County; that they kept bachelor's hall, and lived together in a small house belonging to him and had for several months before the killing; that they had always appeared to be on good terms, in fact as stated by Mr. Foree that they acted like brothers.

On one Sunday in December, 1912, they each procured from their employer a horse and buggy, one to go one place and the other to another, but it appears that that afternoon they met at the residence of Martha Darkess, another negro in the vicinity, where there was quite a gathering of negroes.

While appellant and Martin were there, and while they together with two negro women were in a room, Martin was shot in the temple by a pistol in the hands of appellant and immediately died.

The two negro women who were in the room stated in substance that they were on one side of the room engaged in looking at some pictures on the wall; that they heard no words or altercation of any kind between the two men, that their backs were turned when the pistol fired; that there had been no quarrel or unpleasantness.

Immediately after the shooting appellant left the room and went out into the yard where, as stated by three or four of the negroes, he said he had killed Pryor Martin, and that he had just as soon kill two or three as not; he thereupon got into his buggy and taking one of the negro women with him went to his brother's nearby where he stayed until Monday when he disappeared; afterwards he was located and arrested in Indiana.

Appellant admitted that before the occurrence in question he had taken one or more drinks of whisky, but there is no evidence that he was to any great extent under the influence of it.

Appellant's own testimony is in substance that he and Martin were on excellent terms, that there had never been any difficulty or misunderstanding between them, that Martin was the best friend that he had ever had, and that the shooting was purely accidental.

His version of how the shooting happened is that while he was standing in front of the grate and Martin sitting in a chair nearby, Martin asked him to lend him his gun, and that he said all right; that he then pulled his gun (meaning pistol) out of his pocket and com-

menced working the trigger or cylinder when it went off and shot Martin.

The contention of appellant that there was a total failure of proof of malice, and that all the facts and circumstances show that the killing was purely unintentional, and for that reason the verdict is flagrantly against the evidence, cannot be sustained in the light of the testimony of the negroes who stated that appellant said immediately afterwards that he had killed Pryor, and would just as soon kill two or three more.

From this evidence the jury had the right to infer malice.

The court instructed on involuntary manslaughter, but failed to give an instruction on voluntary manslaughter, and it is urgently insisted that from the evidence appellant was entitled to that instruction.

Under the instructions as given, the jury had no alternative except to adjudge the defendant guilty of involuntary manslaughter, and thereby imposed upon him a small punishment of fine and imprisonment in the county jail, or give him the extreme penalty of life imprisonment or death.

It has been the uniform ruling of this court in cases where homicide is claimed to be accidental, and there is any evidence to justify it, that it is the duty of the trial court not only to give an instruction upon accidental and unintentional killing, but to give one based upon the reckless or grossly careless use of firearms constituting voluntary manslaughter. This whole question is exhaustively treated in recent opinions of this court in the cases of McGeorge v. Commonwealth, 145 Ky., 540, and Pash v. Commonwealth, 146 Ky., 390. In those cases the authorities are all referred to and discussed.

In this case the jury might very well have believed from the evidence of appellant that the killing was unintentional, but believe at the same time that he was so reckless and careless in handling the pistol that he ought to have been punished more severely than by a mere fine and jail sentence; and yet under the instructions of the court they had no alternative except to thus practically turn him loose or give him a life sentence.

Under the evidence in this case the ends of justice and the rule referred to require that the voluntary manslaughter instruction should be given.

Judgment reversed for new trial, and for further proceedings consistent herewith.