## Eastridge v. Commonwealth.

(Decided June 2, 1922.)

## Appeal from Bell Circuit Court.

1. Judges—Affidavit in Support of Motion to Vacate Bench.—The affidavit in support of a motion for the regular judge to vacate the bench provided for in section 968, Kentucky Statutes, must do more than state the defendant's belief that the judge will not afford him a fair and impartial trial, and must state facts, and not mere conclusions, which necessarily show prejudice or bias by the judge sufficient to prevent him from fairly and impartially trying the case.

2. Judges—Vacation of Bench.—The mere fact that the crime was committed while the judge was Commonwealth's attorney and that as such he drew or signed the indictment does not disqualify him from presiding at the trial.

3. Judges—Vacation of Bench—Affidavit.—The allegation that as Commonwealth's attorney he was very vigorous in the prosecution of this case, as he was in all like cases, without stating the facts from which vigorous action was assumed, is but a conclusion of the affiant, and will be disregarded.

4. Homicide—Dying Declarations.—Although the competency of a dying declaration of statements made by deceased is established, it is error to permit a paper upon which they were written by the witness when made but not signed by the deceased, to be read to the jury as his dying declaration.

5. Homicide—Instructions.—Where it is claimed the homicide was accidental and there is any evidence to support it, it is the duty of the trial court to give instructions upon accidental and unintentional killing, and if there is evidence to support it, to give one based upon a reckless and grossly careless use of firearms constituting voluntary manslaughter.

JOHN HOWARD and J. G. ROLLINS for appellant.

CHAS. I. DAWSON, Attorney General, THOS. B. McGREGOR, Assistant Attorney General, T. G. ANDERSON and B. B. GOLDEN for appellee.

OPINION OF TE COURT BY. JUDGE CLARKE—Reversing.

At the May term, 1920, of the Bell circuit court the appellant was charged by indictment with the murder of Chad Woodward. At the February term, 1922, of that court he was tried, convicted and his punishment fixed at life imprisonment in the penitentiary.

Hon. J. G. Forester was commonwealth's attorney for the district when the killing occurred, and as such

signed the indictment charging defendant with the crime of murder; he later became judge of the district and presided at the trial.

The first ground relied upon for reversal is the refusal of Judge Forester to vacate the bench. Section 968 of Kentucky Statutes provides for a trial before a special judge when the regular judge of the circuit court fails to attend or cannot properly preside in any action, proceeding or prosecution, "or if either party shall file with the clerk of the court his affidavit that the judge will not afford him a fair and impartial trial."

Construing this statute, we have uniformly held that the truth of facts alleged in the defendant's affidavit can not be assailed, and that for this reason he must do more than simply state in his affidavit his belief that the judge will not afford him a fair and impartial trial, and must state not mere conclusions but facts which necessarily show prejudice or bias by the judge sufficient to prevent him from fairly and impartially trying the case. Sparks v. Colson, 109 Ky. 711, 60 S. W. 540; Powers v. Commonwealth, 114 Ky. 237, 70 S. W. 644; Wather v. Commonwealth, 133 Ky. 94, 116 S. W. 339; Hargis v. Commonwealth, 135 Ky. 578, 123 S. W. 239; Tolliver v. Commonwealth, 165 Ky. 312, 176 S. W. 1190; Chreste v. Commonwealth, 178 Ky. 311, 198 S. W. 929.

The only facts stated in the affidavit which appellant filed in support of his motion are that the killing occurred while the regular judge was commonwealth's attorney and as such he signed the indictment against the defendant, to which is added, "and was very vigorous in the prosecution of this case, as he was in the prosecution of all cases of like manner" during the time he was commonwealth's attorney for the district.

The Code does not require the commonwealth's attorney to sign an indictment (Sims v. Commonwealth, 13 S. W. 1079, 12 Ky. L. R. 215; Brown v. Commonwealth, 135 Ky. 635, 117 S. W. 281), but as we know judicially he does so in nearly every instance although in most cases he knows nothing whatever about the facts, as the county attorney rather than the commonwealth's attorney for the district usually attends to all preliminary matters connected with the prosecution and assists the grand jury in securing the presence and in the examination of witnesses. Unless, therefore, facts are stated showing that in a particular case the commonwealth's attorney has examined the witnesses or otherwise actively participated

in the prosecution before it reaches the circuit court for trial on an indictment, the presumption would be that he had not done so, even though the indictment was signed by him.

The allegation that he was very vigorous in the prosecution of this case, as he was in all like cases, would indicate that this case had taken the usual course and may mean anything that the affiant considered vigorous action. It is therefore very plainly his own conclusions simply, and under the cases *supra* must be disregarded.

This leaves for determination under this assignment only whether or not the fact the crime was committed while the judge was commonwealth's attorney, and that as such he signed the indictment returned by the grand jury, disqualified him from presiding at the trial.

By the constitution or statutes in most states a judge who has been of counsel in a case, civil or criminal, pending before him, is disqualified to act therein, 23 Cyc. 586; 15 R. C. L. 534, but not so in this state; and while there is some conflict in the authorities as to the rule in the absence of constitutional or statutory regulation, this court is committed to the view that in a criminal case the fact that the regular judge while commonwealth's attorney drew or signed the indictment does not disqualify him from trying the case.

In fact, in Hargis v. Commonwealth, *supra,* a murder case, it was held that a statement by the judge while commonwealth't attorney that his purpose was "to camp upon the defendant's trail and put him where he belonged," added to the facts we have here, did not disqualify him.

Whatever may be thought of the soundness of the extent to which that case goes, we think reason supports our rule as applied to the facts of this case. Ordinarily a commonwealth's attorney for the judicial district, assisted as he is by the attorneys for the several counties in his district, can have but slight information of or connection with any case until after the indictment is returned. If he proves efficient as commonwealth's attorney he is quite frequently elected as judge when his term as commonwealth's attorney expires; a great many indictments drawn by him or in his name will necessarily be left over for trial after he becomes judge, with which his connection has been merely formal, and, as said in the Hargis case, *supra,* "The office of circuit judge is one of great dignity and responsibility. Perhaps the peace and

good order of the district more largely depend upon him than any other one person. The people of the district should not be deprived of the services of the regular judge for trivial causes."

The mere fact that the crime was committed while the judge was commonwealth's attorney and that as such he drew and signed the indictment at the direction of the grand jury and without information of the facts, is, it seems to us, a trivial cause for his removal in the trial of the case. Moreover, the adoption of such a rule would interfere with the speedy disposition of left over cases every time a commonwealth's attorney is elected judge, besides adding greatly to the expense of their trial, without any substantial reason therefor. Hence we conclude the judge, upon the showing made, did not err in refusing to vacate the bench.

2. Although the statements made by deceased with reference to the shooting were shown to have been made after he had abandoned all hope of recovery, and were competent as a dying declaration, it was error to permit the paper upon which the witness had written them down as spoken and which was not signed or shown to have been read to and approved by the deceased to be read to the jury. Fuqua v. Commonwealth, 73 S. W. 782, 24 Ky. L. R. 2208; Saylor v. Commonwealth, 97 Ky. 184, 30 S. W. 390; Sailsberry v. Commonwealth, 107 S. W. 774, 32 Ky. L. R. 1095, 10 A. & E. Enc. of Law (2nd ed.) 391. But whether or not this error was prejudicial we need not decide, since it will be avoided upon the next trial and the judgment must be reversed for another reason.

3. At the conclusion of the evidence the court properly gave to the jury instructions on the law of murder, voluntary manslaughter resulting from shooting in sudden heat and passion, and self-defense, which are substantially correct and are not criticised, but it is insisted that in addition the defendant was entitled on the evidence to instructions on accidental and unintentional killing.

The defendant and deceased were engaged in a crap game, and the trouble began when deceased declined to play longer. Defendant then told deceased to get out of the room, as he wanted to talk with Walter Brazelton, whose room it was; deceased told him to get out himself if he wanted anybody to go out. According to the appel-

lant's testimony, the deceased then started toward him with his hand in his pocket under his coat, and that "I was there next to the table sitting down when he started towards me, and I raised up. He had his hand on his pocket under his coat, and I thought he was going to shoot or cut me, and I just raised up, and I had my gun and I never did present the gun to him, and I told him to go on and not let's scrap, and when he came close to me we scuffled and the gun went off."

Further along he was asked and answered as follows: "Q. Could you tell the jury how he got shot? Yes, sir; I can tell them. We were in a scuffle and he caught my hand that the pistol was in and the gun went off. Q. Did you cause the pistol to go off? A. No, sir. Q. Do you know how it came to go off? A. Well, the way we scuffled there ahold of the pistol and pulling it, caused it to go off. Q. Did you ever at any time present this pistol at Chad Woodward or aim it at him? A. No, sir."

We think that this evidence amounts to a claim by defendant that the shooting was accidental, and as said in Wayne v. Commonwealth, 154 Ky. 698, 159 S. W. 548, "It has been the uniform ruling of this court in cases where homicide is claimed to be accidental and there is any evidence to justify it, that it is the duty of the trial court not only to give an instruction upon accidental and unintentional killing but to give one based upon the reckless or grossly careless use of firearms constituting voluntary manslaughter." To the same effect are McGregor v. Commonwealth, 145 Ky. 540, 140 S. W. 691; Pash v. Commonwealth, 146 Ky. 390, 142 S. W. 700; Lewis v. Commonwealth, 140 Ky. 652, 131 S. W. 517; Davis v. Commonwealth, 193 Ky. 598; Terrell v. Commonwealth, 194 Ky. 608.

From the evidence in this case, the ends of justice as well as the rule referred to above required that in addition to the instructions given there should have been instructions upon accidental and unintentional killing, and also one based upon the reckless and grossly careless use of firearms constituting voluntary manslaughter.

Wherefore the judgment is reversed for a new trial and further proceedings consistent herewith.