## Rains v. Commonwealth.

### (Decided November 2, 1928.)

### Appeal from Bell Circuit Court.

1. Homicide.—Omission of word "feloniously" from instruction on voluntary manslaughter was not prejudicial error, though defense was accidental killing.

2. Homicide.—Omission of words "intentional" and "willful" from instruction on voluntary manslaughter was prejudicial error, where defense was accidental killing, not self-defense or other ground not incompatible with intentional shooting.

3. Homicide.—Unintentional killing during heated argument over merits of defendant's pistol would not amount to voluntary manslaughter, unless recklessly done.

4. Homicide.—Defendant having been convicted of voluntary manslaughter, instruction not submitting issue of reckless and grossly careless use of firearms was not prejudicial to him, as he could not complain that jury might have returned same verdict on some other ground not presented in instructions.

5. Homicide.—On new trial granted for prejudicial error in instruction on voluntary manslaughter, the issue of wanton, reckless, or grossly careless use of firearms should be embodied in such instruction and the term "grossly careless" defined.

6. Homicide.—On new trial granted for prejudicial error in instruction on voluntary manslaughter, court should instruct jury to convict of involuntary manslaughter if they believe from evidence beyond reasonable doubt that defendant pointed pistol at deceased and permitted it to be discharged, though believing it would not go off, not intending to shoot deceased, and having no reason to apprehend that it would go off.

7. Homicide.—On new trial granted for prejudicial error in instruction on voluntary manslaughter, instruction to acquit if killing was not murder or voluntary or involuntary manslaughter, but unintentional, accidental, and without carelessness, should state without "whose" carelessness, though criticism thereof for such omission is very technical.

8. Witnesses.—Affidavit for continuance, wherein defendant swore that absent witnesses would testify that some other person than defendant did the shooting and that such testimony was true, was

competent to contradict his testimony on trial that he himself did shooting accidentally.

JAS. S. GOLDEN and J. H. TAYLOR for appellant.

J. W. CAMMACK, Attorney General, and N. R. PATTERSON for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

From a judgment of conviction of the offense of voluntary manslaughter, this appeal is prosecuted.

The appellant at the time of the homicide was running a taxicab in the city of Pineville. He lived on Greasy creek. On the afternoon of August 14, 1927, he left his home in his automobile bound for Pineville. On his way to that city he overtook Beach Holland, who got into the automobile and seems to have remained with appellant the rest of the afternoon and evening. Holland was armed with a German Luger pistol, which he placed on the seat between himself and the appellant. There is some evidence tending to show that the safety catch on this pistol was in a defective condition. On the way to town the couple met R. B. Profit, who was having trouble with his automobile. The appellant got out, fixed Profit's car, and then drove back to Profit's house, where he was regaled by Profit with a couple of drinks of moonshine whisky. The appellant and Holland then rode around the town and county for a while in rather an aimless fashion, then followed a Ford automobile which they say they thought contained rum runners, and finally wound up at the railroad station in Pineville. Profit's car was sitting near by. As they got out of the car, Holland left his gun on the seat, but appellant picked it up and put it inside of his shirt. Appellant walked over to Profit's car and threatened to shoot out the windshield. Appellant says, however, that this threat was uttered simply in jest. He and Holland then went over to a restaurant nearby, where they met Tud Hoskins. A little controversy of not much consequence came up between Hoskins and Holland, and there is some testimony, although slight, to the effect that appellant made a threat against Hoskins. After finishing their meal, appellant and Holland left the restaurant and again rode aimlessly around the city and county until about 11 o'clock that night. At

this time Silas Jones, who had ridden in to town on his mule with a friend in search of an undertaker, was seated on his mule on a street near the courthouse waiting for the return of his friend. Tud Hoskins, seeing him, went up to him and was talking to him about procuring some moonshine whisky. While they were thus engaged in conversation, the appellant and Holland passed in their automobile, and as they did so Hoskins called out for "Red Rock," which was Holland's nickname, to stop. The appellant stopped his machine some distance down the street from where Hoskins and Jones were and backed up a piece towards them. Hoskins went to the machine and stood on the street by it on that side where the appellant, who was driving, was seated. Something was said by Hoskins about some whisky, and the appellant said something about having a pretty gun. At that time Holland's pistol was lying on the seat between appellant and Holland. Hoskins said, "the damned thing will not shoot." As appellant picked the pistol up, Hoskins pointed his forefinger to the middle of his forehead and said, "Shoot me there." Appellant at this juncture had the gun pointed towards Hoskins. Hoskins made a grab for the gun and, as appellant says, succeeded in taking hold of it. As Hoskins grabbed, the appellant pulled the trigger, the gun fired, and the ball hit Hoskins in the middle of the forehead. He fell prone to the street dead. After the appellant and Holland had exchanged a few remarks, the former got out of the car to see if there was any blood upon it and, finding none, got back into the car, whereupon he turned his machine around and fled with Holland from the scene of the homicide. The couple first went to Middlesboro, where the police, who had been informed of the homicide but who did not have the correct license number of the automobile containing the men who had fired the fatal shot, stopped them. They professed ignorance of the homicide and the police allowed them to go. Although they were headed towards Tennessee, they decided that they had best proceed no further in that direction, and so they turned around and came back to Pineville. On their way back, they stopped and Holland got out and hid the pistol. They then came on to Pineville, and appellant sought sanctuary with some of his relatives. The next day he was arrested for this homicide.

As grounds for reversal, appellant contends that the instruction on voluntary manslaughter, under which he was convicted, was erroneous. That instruction reads:

"If you believe from the evidence beyond a reasonable doubt that the defendant, Bill Rains, did in this county and before the finding of the indictment without previous malice and not in his necessary or reasonably apparent necessary self-defense but in a sudden affray or in a sudden heat and passion, upon a provocation reasonably calculated to excite his passions beyond the power of his control, shoot and kill Enoch Hoskins with a pistol loaded with powder and leaden ball, you should find him guilty of voluntary manslaughter and fix his punishment at confinement in the state penitentiary for a period of not less than two nor more than twenty-one years, in your discretion."

Appellant criticizes this instruction under two aspects. He first says that as his defense in this case was "accidental killing," the instruction was erroneous because it failed to require the jury to believe that the shooting was willfully or intentionally and feloniously done. The omission of the word "feloniously" from the instruction was not prejudicial. This is too well settled to require further discussion. Adams v. Commonwealth, 212 Ky. 334, 279 S. W. 332. But the omission of the word "intentional" or "willful," or other words of like import, was prejudicial. In Bradley v. Commonwealth, 201 Ky. 413, 257 S. W. 11, writing on this point, we said that the question of intention has always been held to be an essential element in the crime of voluntary manslaughter. A number of cases are cited in that opinion to sustain that proposition. True it is that many opinions of this court may be found where we held that the omission of the idea of "intention" from the instruction on voluntary manslaughter was not prejudicial; but in each instance it will be found that the accused did not deny intending to shoot the deceased, but defended on the ground of self-defense or some other ground not incompatible with an intentional shooting. Sims v. Commonwealth, 106 S. W. 214, 32 Ky. Law Rep. 443. But where the defense rests upon a claim incompatible with an in-

tentional shooting, the omission of the idea of "intention" from the instruction on voluntary manslaughter has been held to constitute reversible error. Thus in the cases of Shipp v. Commonwealth, 124 Ky. 643, 99 S. W. 945, 30 Ky. Law Rep. 904, 10 L. R. A. (N. S.) 335, where the defense was insanity; Beaty v. Commonwealth, 140 Ky. 230, 130 S. W. 1107, where the defense was accidental killing; Montgomery v. Commonwealth, 81 S. W. 264, 26 Ky. Law Rep. 356, where the defense was also accidental killing; and the Bradley case, supra—the omission of the idea of "intention" from the instruction on voluntary manslaughter was held to require a reversal. The instant case falls under the latter head. The killing of Hoskins might have occurred while he and the appellant were in a heated argument over the merits of appellant's pistol and under all the circumstances detailed in the instruction, and yet it might have been unintentional on the part of the appellant, in which event the killing would not amount to voluntary manslaughter unless recklessly done, as we shall presently discuss. As we said in the Bradley case, the failure to submit the question of intention practically destroyed the defense of the accused.

The other criticism which appellant makes of this instruction is directed to its failure to submit the issue of reckless and grossly careless use of firearms on the part of appellant. This omission was not prejudicial to the appellant, since, as we said in Peace v. Commonwealth, 146 Ky. 754, 143 S. W. 399:

"Having been convicted of voluntary manslaughter, he (appellant) may not complain of the fact that the jury might have returned the same verdict on some other ground which the court neglected to present in its instructions."

However, as the case must be reversed for the prejudicial error in the instruction on voluntary manslaughter we have heretofore pointed out, the court on the next trial will also embody in such instruction this issue of a wanton, reckless, or grossly careless use of firearms. See Wayne v. Commonwealth, 154 Ky. 698, 159 S. W. 548. The court will also define the term "grossly careless" as set out in Rowe v. Commonwealth, 206 Ky. 803, 268 S. W. 571.

Appellant complains of the instruction on involuntary manslaughter, but without stopping to determine whether his complaint rises to the dignity of a reversible error, we are of opinion that it will be better for the trial court on the next trial to instruct on this question in substance that, although the jury do not believe from the evidence beyond a reasonable doubt as set out in the instruction on voluntary manslaughter, yet if they do believe from the evidence beyond a reasonable doubt that appellant pointed the pistol at Hoskins and in thus doing permitted it to be discharged, although believing it would not go off nor intending to shoot Hoskins and not having reason to apprehend that it would go off, to find him guilty of involuntary manslaughter. McGeorge v. Commonwealth, 145 Ky. 540, 140 S. W. 691.

The fourth instruction is complained of because there the court told the jury that if the killing of Hoskins by appellant was not murder, voluntary or involuntary manslaughter, as theretofore defined in the instructions, "but was unintentional and accidental and without carelessness," they should acquit him. The criticism is directed to the fact that the quoted part of the instruction does not state without "whose" carelessness. We think this criticism is very technical; but as the case has to go back for a new trial anyhow, it will not hurt to comply with appellant's request, and to thus remove any possible source of complaint on his part.

Complaint is made about the reception and rejection of testimony. Most of this complaint is as to inconsequential matters, but appellant seriously argues that there was one very prejudicial admission of evidence which came about in this way: This case had been called for trial once before the time when the trial actually took place. On this first calling of the case, appellant sought and was granted a continuance on the ground of absent witnesses. In support of his motion for a continuance, he filed pursuant to the Code his affidavits setting out what his absent witnesses would say if present. This affidavit was in the standard form, and in substance not only averred that which his witnesses if present would say, but also affirmed that such testimony was true. Now, appellant swore in this affidavit that his witnesses if present would say that he did not commit this homicide, but that some other person did the shooting. He swore

this testimony was true. On this trial, when he admitted doing the shooting and claimed it to be an accident, he was confronted by this affidavit which the court permitted to be read to the jury for the purpose of contradiction, and that it was competent for such purpose is quite clear. It was a statement made by appellant in direct conflict with the statement made by him in court, and so was admissible for the purpose of contradiction.

For the reasons hereinbefore set out, this case is reversed, with instructions to grant the appellant a new trial in conformity with this opinion.