**STATE of Missouri,
Plaintiff-Respondent,**

v.

**George STUBENROUCH,
Defendant-Appellant.**

No. 38700.

Missouri Court of Appeals,
Eastern District,
En Banc.

Oct. 16, 1979.

Motion for Rehearing or Transfer
Denied Nov. 20, 1979.

Application to Transfer Denied
Jan. 15, 1980.

---

Lawrence J. Fleming, St. Louis, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Paul R. Otto, Chief Counsel, Asst. Atty. Gen., Nanette Laughrey, Stanley Robinson, Asst. Attys. Gen., Jefferson City, Daniel M. Buescher, Pros. Atty., Franklin County, Union, for plaintiff-respondent.

STEWART, Judge.

Defendant was convicted by a jury of manslaughter and sentenced to six years imprisonment for the death of William Homfeldt, who died of a gun shot wound. He appeals from the judgment entered in accordance with the verdict of the jury. We reverse and remand.

Defendant concedes that there was sufficient substantial evidence to support the judgment. The primary issues presented are whether the court erred in refusing to give instructions submitted by defendant on the defenses of accident and self-defense.

On the issues presented we must view the evidence in the light most favorable to the defendant and give him the benefit of all reasonable inferences that may be drawn from that evidence. We ignore the evidence of the State except where it is favorable to defendant. *State v. Cole*, 377 S.W.2d 306, 307 (Mo.1964). Despite the fact that justifiable homicide and excusable homicide are inconsistent defenses, defendant is entitled to have both defenses submitted if there is sufficient evidence to support the submission and if defendant's personal testimony is not relied upon to support both. *State v. Randolph*, 496 S.W.2d 257, 262 (Mo. banc 1973).

With these principles in mind we first review the evidence favorable to defendant with respect to the defense of excusable homicide by reason of accident.

Defendant had retired from the Metropolitan St. Louis Police Department after 28½ years of service. He purchased a home in Peaceful Valley, a lake development near Owensville in Gasconade County, and had been living there since 1970. At the time of trial in June, 1976, he was 64 years of age. When he moved to Peaceful Valley he was appointed a deputy sheriff by Sheriff Heberle and performed duties as a security guard at the lake development. He was not reappointed by Sheriff Gerloff, Sheriff Heberle's successor. He was an officer on the board of directors of the home owners association of the lake development but no longer performed the duties of security guard.

On the evening of August 16, 1975 some young people had a party at Owensville City Park. Among the group was the deceased, William Homfeldt, 23 years of age, Lee Kreter, 22 years of age, and Rosa Mueller, 19 years of age. Kreter had purchased a keg of beer for the occasion which he put in his van. Kreter and Rosa Mueller testified that the three of them had four to five beers. They also had some wine. Kreter and Rosa Mueller testified that they could feel the effects of the liquor. The deceased was found to have had .156 percent of alcohol in his blood which would make him legally intoxicated. § 564.442 1(3) RSMo (1972).

Homfeldt, Kreter and Mueller left the park at about 9:30 PM and went to Peaceful Valley. They were met at the gate by Vanis Thompson, a security guard. In order to gain entrance to the lake development property Kreter told Mr. Thompson that Rosa Mueller owned property in the development. Mr. Thompson checked the list of owners, found she was not listed, and refused them entrance. Kreter than stated that they were going to visit Bobby Flottmann, a friend who lived in the development. Mr. Thompson then admitted them and told them to go down and see if Flottmann was there. They were told that if he wasn't, they were to come right back. The trio drove by Flottmann's house, saw no lights and assumed he was not home. They then went down to the dock. After a short while Mr. Thompson went out to check on them. He went down to the dock and found Rosa was undressing. The deceased and Kreter had undressed and were in the water hidden behind a boat. Mr. Thompson told Rosa to get her clothes on. She said she was going swimming and took off the rest of her clothes. Mr. Thompson told them that they were on private ground and ordered them to get out. He then went to defendant to get help. He went to defendant because his supervisor was on vacation and "He [defendant] was in charge." When he aroused Mr. Stubenrouch, Thompson was nervous and visibly shaking. He told defendant that he had trouble with three young people who were drunk. He said that they cursed him and refused to leave. There had been trouble at Peaceful Valley with home burglaries, theft of equipment from boats, and with unauthorized persons drinking and having pot parties on the property. Because of Mr. Thompson's obvious concern and his description of the condition of the persons with whom he was having trouble Mr. Stubenrouch put a snub nose .38 revolver in his pocket. Mr. Thompson drove defendant down to the dock. They parked with the headlights shining onto the dock area. Defendant and Thompson got out of the vehicle and approached the dock. Kreter and Homfeldt were on the dock. They had their trousers on but no shirts. Rosa Mueller had her blouse on and was pulling up her jeans.

As defendant approached the dock he removed the gun from his pocket and held it in his right hand at his side. He called out "Put your hands up" and Kreter and Homfeldt raised their hands. When Thompson and defendant got to the dock Kreter had put his hands down. Rosa was to defendant's left. She was glassy eyed and unsteady. When asked her name and age she said "I'm not going to tell you nothing." Defendant then grabbed her arm and pulled her around in front of him and then to his right with his left hand and told her to go up into Kreter's van. He was then holding the gun down at his right side. Homfeldt said "Take your hands off of her. You don't have to treat her like that," at the same time Homfeldt and Kreter started moving toward defendant. Homfeldt took two quick steps toward defendant and Kreter took about a half step. Defendant made a small backward motion, then forward. He started to raise the gun intending to fire a shot in the air. As he was raising the gun Rosa struck him across the forearm and the gun discharged. The bullet struck Homfeldt in the chest causing an injury that resulted in his death. Defendant did not aim the pistol at any one and did not intend to shoot Homfeldt.

In contrast to the evidence favorable to defendant, evidence on behalf of the State tended to show that as Homfeldt came toward defendant the defendant said "I'm too old to be hurt by punks like you." He then aimed the gun at Homfeldt and fired. Rosa did not touch defendant.

■ The statute which governs our consideration of the primary issue in this case is § 559.050 RSMo (1969). That portion of the statute applicable to this case reads:

"Homicide shall be deemed excusable when committed by accident or misfortune, in either of the following cases:

(1) In lawfully correcting a child, apprentice or servant, or in doing any other lawful act by lawful means, with usual and ordinary caution, and without unlawful intent;"

This statute is a restatement of the common law on the subject. *State v. Browning*, 442 S.W.2d 55, 57 (Mo. banc 1969); *State v. Cook*, 512 S.W.2d 907, 910 (Mo.App. 1974). Generally "the accident that will acquit a defendant is the accidental firing of the gun and not the accidental course the bullet takes." *State v. Richardson*, 321 S.W.2d 423, 429 (Mo.1959). See *State v. Tatum*, 414 S.W.2d 566, 568 (Mo.1967). In the case at bar the defendant did not intend to fire the gun at any person and he did not intend to fire the gun at the moment it was discharged. Defendant testified that he did not aim the gun at deceased and that he did not intend to shoot him. Rather, he raised the gun so that he could fire a warning shot in the air. He testified that Rosa Mueller struck his right arm as he was raising it to fire into the air and the gun discharged when his arm was struck. The inference, favorable to defendant, to be drawn from this evidence is that the act of Rosa Mueller in striking defendant's arm caused the gun to be discharged. There is thus sufficient evidence to warrant a finding that the gun was accidentally fired.

The State argues that the trial court correctly refused to give instructions on excusable homicide because defendant was engaged in an unlawful act. It has been held that under the statute and the common law an accidental killing is not a valid defense if the homicide is "committed in the perpetration of an unlawful act or through culpable negligence." *State v. Aitkens*, 352 Mo. 746, 179 S.W.2d 84, 93 (1944). The evidence favorable to defendant would warrant a finding, however, that defendant lawfully carried a gun after Vanis Thompson called upon him for assistance. The lake development property was private property. There had been trouble with burglaries and thefts and vandalism. When Mr. Thompson came to defendant's home to obtain assistance he was in an extremely agitated state. He told defendant that he had three drunks on his hands who would not obey his order to leave the premises. Defendant did not know what he might have to face in assisting the security guard. A person may lawfully arm himself in reasonable anticipation of an attack under such circumstances. See *State v. Plassard*, 355 Mo. 90, 195 S.W.2d 495 (Mo. banc 1946); *State v. Welch*, 37 N.M. 549, 25 P.2d 211 (1933).

The State further contends that defendant is not entitled to an instruction on excusable homicide because he was in the act of exhibiting a dangerous and deadly weapon and was therefore acting in an unlawful manner. A favorable reading of the evidence would justify defendant's exhibiting to avert an attack. As defendant pulled Rosa across to his right side the deceased made what Vanis Thompson understood to be a threat.[1] Deceased and Kreter advanced toward defendant at the same time. Defendant's first reaction to the threat and to the approach of the two men was to move backward, indicating his apprehension of bodily injury at the hands of the trespassers. In order to invoke the right of self-defense by exhibiting a dangerous weapon in a rude, angry, and threatening manner, the degree of danger to be apprehended is not as great as that required in prosecution for assault with intent to kill or in cases of homicide. *State v. Ruffin*, 535 S.W.2d 135 (Mo.App.1976). See also *State v. Plassard, supra* at 497. The jury could have found that in exhibiting the gun prior to the accidental firing, defendant was reacting lawfully to that degree of danger shown by the evidence and which he apprehended. The defendant had invoked his right of self-defense, but he did not invoke the law of self-defense because the shooting was not intentional. The jury could have found that the defendant was acting in a lawful manner when the gun was discharged accidentally and without culpable negligence on the part of defendant. The defendant was entitled to an instruction on the defense of accident. *State v. Crowley*, 345 Mo. 1177, 139 S.W.2d 473, 476 (1940); *State v. Peal*, 463 S.W.2d 840,

1. "Q. Had you heard at any time either Rosa Mueller, Homfeldt or Lee Kreter threaten the defendant?

A. Just only when he said, 'Take your hand off of her.' "

842 (Mo.1971); *State v. Meidle*, 202 S.W.2d 79, 81 (Mo.1947). See also *Beaty v. Commonwealth*, 140 Ky. 230, 130 S.W. 1107 (1910).

■ Defendant also urges that he was entitled to an instruction on self-defense. We can look only to evidence other than the personal testimony of the defendant to determine whether there is substantial evidentiary support for submission of this theory of defense. *State v. Randolph, supra.* Neither deceased, Kreter or Rosa Mueller was armed. There was a threat and an advance upon defendant but at most he could have feared a simple assault. " 'The right to kill in self-defense is founded in necessity, real or apparent' . . . and before such extreme measure may be lawfully resorted to the record must show that the [defendant] acted 'under at least an apparent necessity, in order to save himself from death or great bodily harm.' . .'" *State v. Parker*, 403 S.W.2d 623, 627 (Mo. 1966). Apprehension of a simple assault, alone, will not warrant a killing in self-defense. *State v. Ruffin, supra* at 137; *State v. Brown*, 502 S.W.2d 295, 299 (Mo.1973). While defendant's intended action to avoid physical conduct may be justified and called for an instruction on accident, the evidence aside from that of defendant did not call for an instruction on self-defense.

Other matters which were not properly preserved for our review will not be discussed and from what we have said above are not likely to reoccur upon retrial.

For the failure to give an instruction upon excusable homicide by reason of accident or misfortune the judgment is reversed and remanded for a new trial.

WEIER, C. J., and SATZ, GUNN, STEPHAN and SNYDER, JJ., concur.

KELLY, J., dissents in separate opinion.

KELLY, Judge, dissenting.

I respectfully dissent because I believe the evidence, even though viewed most favorably from appellant's vantage point, proved that at the time he shot and killed William Homfeldt he was acting unlawfully and with culpable negligence and under Missouri law was not entitled to an instruction submitting the defense of excusable homicide.

The only excuse for flourishing a deadly weapon in a rude, angry or threatening manner is that the flourishing was in self-defense. *State v. Overshon*, 528 S.W.2d 142, 143[3] (Mo.App.1975); *State v. Rice*, 522 S.W.2d 656, 659[7] (Mo.App.1975).

The majority opinion, correctly I believe, holds that under the evidence appellant was not entitled to an instruction on self-defense.

Therefore, the appellant, since he was not acting in self-defense was engaged in an unlawful activity when he exhibited or flourished his .38 caliber snub-nosed revolver at the deceased and his companion and is not entitled to the instruction.

The majority concludes that the evidence, viewed favorably to the appellant, would warrant a finding that he "lawfully carried a gun after Vanis Thompson called upon him for assistance." As authority for this view, the majority relies on *State v. Plassard*, 355 Mo. 90, 195 S.W.2d 495 (1946). I am of the opinion that reliance on *Plassard* is misplaced.

From this record one learns that the lake and dock where this unfortunate occurrence took place was "common property." It is also uncontradicted that appellant was a member of the board of directors of the property owners association of this lakeside development. However, what rights, possessory or otherwise, he, as a homeowner or a member of the board of directors of the association enjoyed in the area where the shooting took place is not in evidence.

The majority has decided that the appellant had a sufficient interest in the lake and the common property surrounding it to come to the scene armed to evict these three youthful trespassers. They have done so without any proof with respect to what rights, if any, he had in this property. They have assumed that because he was a homeowner in the lakeside development and a member of the board of directors of a

property owners' association he had the right to bear arms "to defend his home and property." This I am unwilling to assume.

The question in *Plassard* was whether the trial court erroneously excluded evidence of the defendant's title to certain farm land as a basis for a defense of protection of his home and property against a charge of feloniously exhibiting a deadly weapon. The Supreme Court held that the trial court should have admitted the evidence to show his right to possession of the land from which he drove his two nieces and others who had come to till the land. Prior to their entry upon the land Plassard warned them not to enter. When they did, he retired to his home on the land, got his .22 caliber rifle and returned to the scene. He fired one shot either into the air or into the ground and the visitors withdrew. It was in this context that the court held that evidence which would show his right to possession should have been admitted because his only defense to the charge turned on his right to possession of the land involved and if he was defending his home and his property he had a constitutional right to bear arms. The court also said, l.c. 497: "If he was not (defending his home and his property), he was unlawfully threatening others which the statute serves to prevent."

The *Plassard* court, although recognizing that one may resist trespass on his property also said that he cannot be allowed to kill a trespasser. And even though one who has a possessory interest in property may go to meet the trespasser to forbid his entry on the property and turns him back while armed, he may use the weapon "only to resist attack in case an attack should be made upon him for asserting his lawful right, and if he made no demonstration with the gun except in resistance to the approach of the trespassers upon him for the purpose of assault. . . ."

It is clear that this recognized right of the landowner to go armed to meet a trespasser is restricted to one with a possessory interest in the home or land and appellant here has utterly failed to show what posses-sory interest, if any, he had in either the lake, the dock, the common ground, or the lakeside development which gave him this right.

*State v. Ruffin*, 535 S.W.2d 135 (Mo.App. 1976) is distinguishable on the facts, because in that case Ruffin had been assaulted earlier the same evening by the prosecuting witness, William Cooper, and his brother, Leo Cooper. William Cooper had told the defendant that he had a "whipping coming." About twenty minutes later the defendant saw the Cooper brothers and they advanced on him, one of the brothers with his hands up under his shirt. One of the brothers said, "Where you going to run now?" At this point the defendant "flashed" a gun at the Coopers which had been handed to him by a bystander.

The court reversed Ruffin's conviction because the trial court refused to submit self-defense to the jury. In this context the court made the statement found in the majority opinion that "In order to invoke the right of self-defense by exhibiting a dangerous weapon in a rude, angry and threatening manner, the degree of danger to be apprehended is not as great as that required in prosecution for assault with intent to kill or in cases of homicide."

*Ruffin* was an exhibiting prosecution and there was evidence to support a self-defense instruction. The majority, in this homicide prosecution, has held there was insufficient evidence to support a self-defense submission. I agree, and therefore the judgment should be affirmed.