# Woodard et al. v. Commonwealth.

(Decided March 1, 1929.)

FORESTER & CARTER for appellant.

J. W. CAMMACK, Attorney General, and JAS. M. GILBERT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

On Sunday, September 11, 1927, Bill Middleton was slain. Nobe Woodard, Sampson Hensley, Paul Hensley,

and Henry Scott were jointly charged by indictment with his murder. They were all tried together. Henry Scott and Paul Hensley were acquitted. Nobe Woodard and Sampson Hensley were found guilty of manslaughter, and their punishment fixed at confinement in the penitentiary for 10 years. To reverse the judgment entered upon that verdict, they have prosecuted this appeal.

These defendants, and a number of others, were present at a Sunday school held on the afternoon of this difficulty, and while there they had some trouble with Hobart Middleton, and he testified that Nobe Woodard drew a pistol on him. Hobart Middleton left the Sunday school and went home. He tried to get a pistol, but his father got the pistol and put it in his pocket to prevent Hobart's getting it. A short time after that difficulty, Henry Scott let his brother-in-law, Henry Spurlock, have a pistol, and Spurlock and Henry Scott came to Middleton's home. Before coming to the Middleton's, however, they did some talking and some drinking. Woodard said: "G— d— them. I aint afraid of none of them." Sampson Hensley replied: "I don't go back on nothing I say. If we don't get the young one, we will get the old one." There is evidence that they were drunk and were passing around a jar of liquor. There is evidence that one Patton Fee and his wife tried to get them not to go, and promised to go down and get Spurlock's horse for him. Mrs. Fee caught hold of the horse one of them was riding and tried to persuade them not to go, but they went. Spurlock and Scott arrived first. Spurlock went out, and got his horse, and, while he was catching his horse, the evidence for the commonwealth is that Henry Scott stopped at the front gate. Paul Hensley, Sampson Hensley, and Woodard soon came up. Henry Scott had formerly lived with the deceased, and, probably on that account, he called for Middleton to come down there. Middleton came. His wife and daughter came with him, and, according to them, when he reached the gate, the deceased said: "How are you boys?" Some of them remarked, "You must be down here for trouble." Nobe Woodard came in the gate with a pistol in his hand, and began shooting at Middleton. A number of shots were fired. Bill Middleton fired four or five shots himself, and probably wounded Nobe Woodard, though that is disputed. According to the commonwealth's witnesses, all of this crowd were shooting at Bill Middleton, and Sampson Hensley killed him.

The defendants admit having some trouble with Hobart Middleton at the schoolhouse, but say no pistol was drawn on him. They deny being drunk, and deny pretty much everything the commonwealth contends occurred. Their contention is that they merely stopped at the gate to wait for Spurlock to get his horse, and that, while they were waiting there, Bill Middleton came down from the house and began the difficulty by shooting at Nobe Woodard, and that Nobe Woodard began shooting then in his self-defense, and that he was the one that killed Middleton.

The evidence of the two sets of witnesses cannot be reconciled. It cannot all be true. It was for the jury to discover the truth. A case will not be reversed because the jury believes one set of witnesses rather than another. Couch v. Com., 227 Ky. 190, 12 S. W. (2d) 285.

This verdict will have to stand, unless the court committed some error which probably caused the jury to reach an erroneous conclusion.

The defendant objected to evidence regarding the difficulty with Hobart Middleton, and to the things that occurred at the Sunday school before they went to Middleton's house. They insist that was evidence of another and a distinct offense, and should not have been admitted. The evidence of other and distinct offenses is not admitted, unless it is needed to establish motive, identity, or the like. See Perkins v. Com., 227 Ky. 129, 12 S. W. (2d) 297. The evidence admitted falls within the exception to the rule, and was properly admitted, for the purpose of showing the state of mind of these defendants and their predetermination to harm the deceased or Hobart Middleton. All this happened just a few minutes before the killing, and it is well settled that such evidence is admissible. See Perkins v. Com., supra.

The defendants objected to the evidence of Hobart Middleton, that his father got this pistol to keep him from getting it, but that evidence, instead of being prejudicial to the defendants, was favorable to them, because it showed that Bill Middleton was prepared for a difficulty. Nobe Woodard was asked, when on the stand, if he had not said: "I want to tell you, I may never see you no more. I never killed Bill. The two shots fired behind me killed Bill. All I hate, I was not the one that killed him." The commonwealth then called two witnesses, and they testified that Nobe Woodard did make that statement. The court then said to the jury: "You will not

accept the testimony of Victoria Brittain and Sam Selby as evidence against either one of the other defendants, but only for the purpose of contradicting Nobe Woodard as a witness, if in your opinion it does contradict him touching the credibility of his testimony." The defendants objected to all of this evidence, the court overruled them, and they objected to the court's admonition, but the court's admonition was more favorable to them than it should have been. This statement of Woodard was direct substantive evidence against him, and Victoria Brittain and Sam Selby should have been called for the commonwealth in chief, and asked about that conversation. It was not necessary to ask Woodard about this statement before calling these witnesses. We discussed this matter thoroughly in the recent cases of Oney v. Com., 225 Ky. 590, 9 S. W. (2d) 723, and Berry v. Com. 227 Ky. 528, 13 S. W. (2d) 521. In the latter case, we pointed out just how much evidence should be introduced. It is insisted for Sampson Hensley, however, that this statement of Woodard, that the shot that killed Bill Middleton came from behind him, was very prejudicial to Sampson Hensley, but we cannot think so, in view of the court's admonition that this evidence should not be considered against any of the defendants other than Woodard.

Ruth Alexander, the official stenographer, was called as a witness, and was permitted to testify, over the objection of the defendants, to some statements made by Sampson Hensley at the examining trial, but that evidence was properly admitted, for the same reason we gave relative to the evidence of the statements made by Woodard.

The defendants objected to the instructions given, which they say were unduly numerous, but they say, in their brief, that they are unable to point out any specific error in them, and we have not discovered any, so the judgment must be affirmed.