# Wright v. Commonwealth.
### (Decided Feb. 16, 1937.)

W. H. SPRAGENS and CHAS. C. BOLDRICK for appellant.

B. M. VINCENT, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF— Reversing.

David T. Wright has appealed from a judgment of the Marion circuit court sentencing him to life imprisonment for the murder of R. C. Henderson.

The grounds urged for a reversal of the judgment are: (1) The evidence is insufficient to sustain a verdict of murder; (2) improper argument of counsel for the commonwealth; and (3) the court erred in failing to instruct the jury on the whole law of the case.

The facts of the case are, in substance, as follows: Appellant, who was twenty years of age, was living as a tenant on the property of the Marion County Fair Association and was also an employee of the association, his duties consisting of clearing or cleaning the

fair grounds in preparation for the fair, and on the day of the homicide and a few days prior thereto he was employed as a guard for the association and his principle duty in that capacity was to keep trespassers from entering the fair grounds.

While the fair was in progress on August 21, 1936, the deceased, Henderson, drove from Lebanon, Ky., to the fair grounds in an automobile with Richard Farris and his son, James Farris, and just before reaching the main entrance to the fair grounds where the ticket office was located the deceased and young Farris got out of the automobile and walked past the entrance along the public road fronting the fair grounds. The elder Farris drove inside the grounds and purchased a ticket for himself, and deceased and young Farris went on some distance along the road adjoining the fair grounds and then entered the grounds through a hole in the fence. However, there is some conflict in the evidence as to whether the Farris boy entered the ground, but there is no dispute that the deceased did so. Appellant approached deceased after he had entered the ground and inquired of him whether he had a ticket and deceased told appellant that he had none and appellant told him that he must either procure a ticket or leave the grounds. Deceased agreed to leave the grounds, and, accompanied by appellant, went toward the hole in the fence through which he had entered. There is also some dispute in the testimony as to the conversation between appellant and deceased while they were going toward the exit. Some of the witnesses for the commonwealth and defendant testified that deceased said to appellant, "Maybe you had better put me out," and made the further statement, "You can't put me out and get by with it." According to the evidence of some of the witnesses for the commonwealth, appellant kicked deceased a number of times from the time they started toward the fence until he reached the fence, and after deceased had gotten through the fence, and while standing on the outside, appellant kicked at him through the fence or kicked the fence. However, the evidence in respect to the kicking of deceased was denied by appellant and he was corroborated by some of his witnesses. With the exception indicated above, there is but slight contradiction in the evidence. According to all of the

evidence, soon after deceased got through the fence and while appellant was standing a few feet from the fence on the inside of the grounds, deceased picked up a bottle, went to the fence, and threw the bottle at appellant, striking him in the forehead, inflicting a wound or cut one and one-fourth inches in length, extending inward to the bone. Thereupon appellant drew his pistol and fired two shots, one of which struck deceased in the temple, resulting in his instant death.

While it is insisted in brief of counsel for the commonwealth that the evidence is sufficient to sustain the jury's verdict of conviction of murder, yet it is conceded that there is no element of malice shown previous to the day of the homicide. It appears that appellant and the deceasd, the latter being a boy seventeen years of age, were not acquainted with each other, and no doubt no ill feeling existed between the boys previous to the controversy resulting in the homicide.

Viewing the evidence in the light most favorable to the commonwealth in respect to the testimony of the witnesses who testified that appellant kicked deceased a number of times before he was evicted from the premises and also kicked him or kicked at him through the fence after deceased had cleared the premises, there is no evidence tending to show that appellant seriously, if at all, wounded or injured the deceased by kicking him, if he did so, or that he attempted to do him any serious bodily injury, although he had a pistol in his pocket. This does not indicate that he had any desire or intention to kill the deceased. After deceased cleared the premises and was standing on the outside of the fence and appellant was standing a few feet from the inside of the fence, which, according to the evidence, placed them ten or twelve feet apart, and the controversy between them having then ended for the time being, it is doubtful that there would have been any further trouble between the boys had deceased not struck appellant with the bottle. Appellant testified that when he was struck with the bottle "everything turned dark," but he could see deceased stooping as though he was attempting to pick up some other object to throw at him and then he, appellant, fired the shot. While appellant's plea of not guilty included all defenses including self-defense, he does not state

in his testimony that he fired the shot in self-defense. He testified that when he was struck with the bottle he was dazed and "everything turned dark" and he did not know or could not remember taking his pistol from his pocket or firing the shot. We note the following questions and answers taken from the testimony of appellant:

"Q. That is young Farris that was with him? A. Yes sir, and me and this other boy came up towards the fence and got ten or twelve feet of the fence, and he stopped and says, I believe I will let you put me out, and then said all right I will get out, and he stooped through the fence, that is his right leg was through, and he stood up, got the bottle and threw it, and he was reaching down to get something else when I shot him. * * *

"Q. After you were struck with the bottle and after you shot, what did you do then? A. When the bottle struck me, seemed like everything just went dark, well I didn't have my right sense, I know I didn't, and when the light did come back I could just barely see, that was when I could see him pick something else to hit me with, and that is when I shot him."

On cross-examination he was asked and answered as follows:

"Q. You don't remember kicking the young man? A. No sir.

"Q. You said when this bottle hit you everything went black? A. I said everything went dark, but my eyes opened up a little.

"Q. You could see well enough to shoot this man? A. I didn't know I was shooting, and I don't know when I got the gun out of my pocket."

It is insisted for appellant that under this evidence and all the attendant circumstances, if the homicide was not justifiable on the grounds of self-defense, viewing the evidence in the light most favorable to the commonwealth, it was insufficient to sustain a verdict of murder and the court should not have given any instruction authorizing the jury to find defendant guilty of murder. Conceding that the evidence was sufficient to warrant the instruction on murder, yet we are con-

**274**

strained to the view that the verdict finding derendant guilty of willful murder is palpably against the weight of the evidence. There is no showing of any malice previous to the time of the controversy, nor is there any evidence either direct or circumstantial tending to show any motive on part of appellant for shooting the deceased except that deceased struck him with a bottle, which according to the evidence inflicted a very painful wound on appellant, and, if it be conceded that appellant was not in any immediate danger of death or great bodily harm such as to justify the killing of deceased, yet the conduct of deceased in striking appellant with the bottle was sufficient to provoke him and it is more likely that appellant fired the shot in sudden heat and passion rather than entertaining any previous desire to commit murder. See Young v. Com., 260 Ky. 38, 83 S. W. (2d) 858.

The next complaint is the alleged improper argument of the commonwealth's attorney, which consisted of this language: ''If the law of self-defense is to be used as justification for slaying the youth of our land, the law of self-defense should be wiped off our statute books.'' The court sustained an objection to the language used and admonished the jury not to consider it. It has been held by this court in some cases that where improper argument consists of language highly prejudicial such as might be calculated to inflame or poison the minds of the jury, notwithstanding an admonition of the court not to consider it, such would be sufficient to warrant a reversal. But we do not think the language used by counsel complained of in the present case is of such highly prejudicial character as to raise the presumption that it inflamed and prejudiced the minds of the jury against the appellant so as to have a controlling effect on their verdict, notwithstanding the admonition of the court not to consider it. The language was improper, but in view of the admonition of the court we do not think it sufficient to justify a reversal of the judgment.

Lastly it is insisted that the court erred in failing to give the jury an instruction on the mental condition or presence of mind of appellant at the time the shooting occurred, because of the wound he had received by being struck with the bottle. We have al-

ready noted appellant's testimony in respect to his presence of mind or mental condition at the time he fired the shot. However, we may further note that a doctor, who attended appellant later in the day after the homicide occurred, testified that appellant did not seem to be normal, and when asked if he could state whether or not the wound on appellant's head was of sufficient force to have dazed him, he answered: "I believe it was, but to what degree I could not say." It is our view that appellant's own testimony is controlling on this point. In his testimony he detailed all that occurred at the time of the shooting. He said that after he was struck with the bottle everything turned dark, but he opened up his eyes a little and he could see deceased reaching to the ground to get something else and then he shot him; and he also stated that he did not know anything about getting his pistol or firing the shot. It appears that his testimony is inconsistent. If he had sufficient presence of mind to see the deceased and to know that he was reaching for another object to throw at him and he then shot him, evidently he knew at the time he did shoot him. In the case of Hayes v. Com., 171 Ky. 291, 188 S. W. 415, 418, the plea of drunkenness was interposed as a defense to the crime of burglary. In that case the accused in detailing what occurred seemed to state a clear narrative of what happened. Or, in other words, he seemed to know all facts necessary to his defense but knew nothing to the contrary. In rejecting the argument that the court should have given instructions on the subject of drunkenness, the court said:

> "But we do not think the evidence in this case was sufficient to support an instruction on the subject of drunkenness. It is true the defendant testified that he was drunk, but as said in Brennon v. Com., 169 Ky. 815, 185 S. W. 489: 'There is a large difference between being drunk and being drunk to such an extent as not to know the acts one commits or their quality.' The defendant may have been drunk, but, nevertheless, judging from his evidence, he knew everything that he did as well as the things that he did not do, and attempted to establish by his evidence every fact necessary to show his innocence of the crime charged. * * * A criminal who has sufficient mind and memory to

give a connected narrative of everything that happened and to relate in detail all the facts and circumstances that might excuse his conduct, is not in a good position to insist that he was entitled to an instruction on the subject of drunkenness merely because he testifies that he was drunk. The unsupported evidence of the defendant that he was merely drunk, when all the facts and circumstances in the case show that he was sober, will not entitle him to an instruction on this subject, nor will the failure to so instruct be prejudicial error."

Many other similar and like cases might be cited, but we think it unnecessary to extend this opinion by further citation of authority on this subject. It is our conclusion that the court did not err in failing to instruct the jury on the question of appellant's sanity or mental responsibility at the time he shot deceased.

There is some complaint made in brief of appellant in regard to the testimony of one Frank Porter, colored, who testified for the commonwealth that a few days before the homicide he met appellant on the road and had a conversation with him and he, the witness, asked appellant if he was going to the fair and appellant said he did not know whether he was going to the fair or not and said, "If he did he might get him a man." The evidence was not objected to and for that reason it could not be considered as ground for a reversal of judgment. But upon another trial of the case, if this evidence should be offered, it should be rejected unless it is made more definite as to whom the threat was directed. It is the established rule in this jurisdiction that a remote and indefinite threat not directed to an individual or a class of one of which the individual is a member, is inadmissible as evidence to show defendant's attitude toward the person against whom he is charged of committing an offense. Wireman v. Com., 206 Ky. 828, 268 S. W. 586; Garrison v. Com., 236 Ky. 706, 33 S. W. (2d) 698.

But being of the opinion, as we have already stated, that the evidence is insufficient to sustain a conviction of murder, the judgment is reversed and remanded with directions to set it aside and grant appellant a new trial, and for proceedings consistent with this opinion.