## Richardson v. Commonwealth.

(Decided April 30, 1937.)

JOE P. CHENAULT for appellant.

B. M. VINCENT, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

Appellant stabbed and killed Charley Burger. He was charged by indictment with murder, and on his trial was found guilty of manslaughter and sentenced to five years in the penitentiary.

The facts are thus stated in appellant's brief:

"It appears from the evidence that for about a year prior to the tragedy, which occurred on December 23, 1935, out of which the indictment in this case grew, the appellant had owned and resided upon a farm in Madison County with his wife and one child. About two months before he was killed, the deceased, Charlie Burger, who was a brother of appellant's wife, came to appellant's home and stayed, and was there joined by his wife and three children about a month later. The inference seems clear from the testimony of Mrs. Charlie Burger

and of L. J. Burger that Charlie Burger was expecting to rent or tend some of appellant's land, or some negotiations to that effect had been had.

"On the morning of December 23, 1935, appellant, with the deceased, took their families to a Christmas tree party at the nearby village of Kingston, and while the wives and children were attending the party the two men drove into Richmond (some eight miles) and procured a half pint of whiskey, drank it and returned to Kingston and took their families home. They then returned to Richmond where appellant says the deceased Burger bought another pint and two half pints of whiskey, drank some and again returned home. It is obvious from all the testimony that both men were showing the effects of the liquor they had drunk. Appellant, after going to his barn and watering his stock, after cutting the ice for them, returned to the house and after removing his shoes and overalls, lay down on his bed and slept until after dark. He was then roused by noise in the room occupied by the Burgers.

"Shortly after that appellant and his wife went into the Burger's room, and while the versions of Mrs. Burger and her small son, who testified, do not agree in detail, as to all that was said and done, with the appellant's account, still, it appears from the story of each that the deceased Charlie Burger was 'handling' his sister, appellant's wife—either patting her or striking her—and that appellant requested him to stop this and took him by an arm to restrain him. The deceased either pushed or knocked appellant backwards and over the stove, and this, appellant testifies hurt him and 'addled' him. Appellant again got up and took hold of deceased by the arm and jerked him loose, or attempted to and all three, Burger, appellant and his wife fell to the floor. Appellant testified that he was addled and did not remember anything until his wife shut his knife on his hand and cut his finger. He testified that he did not then know that he had cut deceased; that he and his wife left the Burgers' room and went into their own room, and shortly Mrs. Burger began to call that Charlie was cut; that he said he 'reckoned not.'

That Mrs. Richardson went back into the Burgers' room, and he followed in just a minute. That his wife said 'You had better go get a doctor' and he went to the nearby village of Kingston and telephoned a doctor in Berea—nearest to his home— who instructed him to bring the patient on into the Berea Hospital, but when he got back to his home he learned that it was too late. The appellant then drove on into Richmond at once and surrendered himself to the jailer of Madison County.''

Richardson never admits cutting Burger or gives any explanation of how or why he did it. He presents no theory of how this happened. He simply says he does not know how it happened. That is different from Crum v. Com., 196 Ky. 802, 245 S. W. 501. ''Crum, testified that he did not intend to shoot Hall, and did not know he had shot him until after a crowd gathered, and he (Crum) had gotten up from the ground; that he and Hall were good friends; that the killing was a result of accident.''

In Wayne, alias Wing, v. Com., 154 Ky. 698, 159 S. W. 548, 549, we said this:

''It has been the uniform ruling of this court in cases where homicide is claimed to be accidental, and there is any evidence to justify it, that it is the duty of the trial court not only to give an instruction upon accidental and unintentional killing, but to give one based upon the reckless or grossly careless use of firearms constituting voluntary manslaughter.''

We applied that in Eastridge v. Com., 195 Ky. 126, 241 S. W. 806, where Eastridge had admitted the shooting and claimed it was accidental. Appellant argues he brought himself within the rule in Gibson v. Com., 204 Ky. 748, 265 S. W. 339, 344, where we said:

''However, there are cases where the accused admits one or more of the essential elements of the offense charged, but attempts to avoid conviction by proving facts or circumstances to excuse what he did, and under such circumstances his theory of the case should be set out in a special instruction.''

We have followed this Gibson Case in Morgan v. Com., 242 Ky. 116, 45 S. W. (2d) 850, which was a

prosecution for perjury. Morgan admitted at his trial that he so testified before the grand jury and that his testimony, that he had not been fined in the police court of Glasgow for being drunk within twelve months before testifying, was false, but that he did not act feloniously, willfully, or knowingly in so testifying. He also at his trial admitted his apparent intoxicated condition on the occasion testified to by the prosecuting witnesses, which occurred within twelve months prior to his testimony before the grand jury, but he contended that such condition was not the result of intoxication from drinking alcohol or other intoxicating liquors, but that it was due to a spasm of asthma to which attacks he was subject, plus the effects of an over-dose of aspirin tablets that he took to relieve the asthma attack, and that the affliction, with the remedy he had taken therefor, produced his apparent intoxicated condition. We held Morgan was entitled to have his defense submitted to the jury in a concrete form.

In like manner in Literell v. Com., 266 Ky. 235, 98 S. W. (2d) 909, Literell admitted the interruption of a public speaking and sought to excuse what he had done, and we held he was entitled to have his defense set forth in a concrete instruction.

Here appellant testifies he did not kill Burger and that he was then unconscious, or, as he expressed it, "addled," hence he is in no position to know how or by whom it was done. He argues he was entitled to have his theory of the case presented by a proper instruction but he had no theory. His claim is he was not conscious at the time and that when he became conscious it was all over and Burger was dying.

The court presented the Commonwealth's theory of how this homicide was committed in this instruction:

> "If the jury believe, from the evidence, beyond a reasonable doubt that in Madison County and before the finding of the indictment and at a time when it did not reasonably appear to him to be necessary as explained in the II instruction, the defendant willfully and feloniously cut and killed Charlie Burger, the jury will find the defendant guilty; guilty of murder, if the jury believe from the evidence beyond a reasonable doubt that such cutting was done with malice aforethought and

with intent to kill said Burger, or guilty of voluntary manslaughter if same was done in sudden affray or in sudden heat and passion without previous malice."

From the verdict we know the jury found Burger was killed by Richardson intentionally, willfully, and feloniously in a sudden affray or in sudden heat and passion, without previous malice.

In other words, the jury gave no credence to Richardson's testimony that he was unconscious at the time Burger received his fatal wound.

If the jury had believed appellant was unconscious at the time, as he claimed he was, it could not have found he did this intentionally or willfully. An unconscious man has neither will or intent while he remains so, and the jury, in order to convict appellant, had to believe he was not unconscious as he claimed, but was conscious, knew what he was doing, and intentionally and willfully cut and stabbed this man in order to kill him. Hence Richardson's claim of unconsciousness was fully presented by that instruction.

In the recent case of Wright v. Com., 267 Ky. 269, 102 S. W. (2d) 14, the appellant made a similar claim of unconsciousness and we there discussed that claim so extensively that further discussion is unnecessary.

The judgment is affirmed.