## Combs v. Commonwealth.

(Decided May 31, 1938.)

C. A. NOBLE for appellant.

HUBERT MEREDITH, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

By verdict and judgment of the Perry circuit court, Gobel Combs has been convicted of the murder of Corbett Smith and sentenced to imprisonment for life. By this appeal he is seeking a reversal on the following grounds: (1) That the court erred in admitting incompetent evidence, (2) that instructions given were erroneous and prejudicial, (3) that in his closing argument the commonwealth's attorney made unwarranted and prejudicial statements, (4) that the conduct of deceased's father during argument by counsel for appellant was prejudicial, and (5) that the punishment fixed by the jury is excessive and the result of passion and prejudice on the part of the jury.

The killing occurred in the village of Vicco in Perry county. Appellant, George Luttrel, Estille McIntosh, Arene Shively and Otis Banks were sitting in front of Spradley's store. It appears that a short time previous appellant and his son-in-law had some sort of difficulty in which appellant's hat became wrinkled and possibly soiled. About the time deceased and Steve McIntosh walked up to where the others were sitting, appellant stated that he would have to get his hat cleaned and pressed and deceased stated that he would press it and thereupon took appellant's hat, threw it on the ground and said, "How do you like that?" to which appellant replied, "All right, if that the way you feel about it." According to the evidence of appellant's companions, deceased saw that appellant was angry and said in substance I will give you my hat and did take off his new felt hat and put it on appellant. The latter then raised up and began cutting him with a knife. The witnesses did not see the knife at first and thought appellant was striking de-

ceased with his fists. He cut him in 12 different places on the body and arms, some of the stab wounds reaching into the abdominal cavity and three being near the heart. Deceased was backing away and attempting to push appellant from him, begging him to desist and there is evidence that after deceased had fallen to his knees and was begging appellant to quit cutting him the latter continued to attack until deceased fell prone one the ground with blood spurting from wounds near the heart. He was immediately placed in an automobile, carried to a hospital at Hazard and died about the time he arrived there.

According to the evidence for the commonwealth deceased had no weapon and made no threats or demonstration toward appellant. Appellant's testimony as to what occurred immediately preceding the cutting was in substance the same as that of other witnesses except that he testified in effect that deceased was cursing him when he took the hat off and threw it on the ground and that he stepped back a step or two; threw his hand in his pocket and said, "What are you going to do about it?" That as he raised up something hit him on the top of the head and fell off on the ground; that deceased had his hand in his pocket and grabbed him by the arm; that Steve McIntosh was standing a little to the left and had a pistol in his hand; that deceased pushed him around toward Steve McIntosh and said "Kill him." That he cut deceased because he thought it was necessary to do so to save his own life.

The first evidence complained of is that of Otis Banks to the effect that after the difficulty began deceased was pushing appellant and was trying to back off from him, it being urged that this was merely a conclusion of the witness. It is apparent, however, that it was not a conclusion but a statement of fact. Practically all other witnesses stated that deceased was backing away from appellant. It is further complained that a witness was permitted to give an opinion as to where the blood was coming from. It is immaterial whether the blood was coming from the heart or from an artery, the fact remains that deceased was bleeding profusely and in fact bled to death. Therefore, appellant was not prejudiced by the statement of witnesses that the blood was coming from the heart.

The deputy sheriff who arrested appellant near the

scene of the tragedy, when asked whether Steve McIntosh was assisting him in making the arrest, replied that the first he knew of him being there was when he saw him with his pistol on appellant and telling him not to move and said, "You killed that boy for nothing." It is urged that this evidence was highly prejudicial. Unquestionably this evidence was improper and should not have been admitted, or the evidence as to the statements made by McIntosh should have been excluded; however, we unhesitatingly conclude that when considered in connection with all the evidence and the proven facts and circumstances, the evidence complained of was not prejudicial.

Instruction No. 2 is complained of because as insisted by counsel it required the jury to believe beyond a reasonable doubt that this cutting was done in sudden affray or sudden heat and passion before they could convict the defendant for any degree less than murder, it being urged that the words "beyond reasonable doubt" should have been omitted from that part of the instruction. It is our conclusion that the instruction is not erroneous in the particular indicated. The first portion of the instruction authorized a conviction for murder if the jury believed from the evidence beyond a reasonable doubt that the cutting was done in circumstances that would constitute that crime and the second portion authorized a conviction for manslaughter if the jury did not believe the cutting was done in the circumstances so indicated but believed beyond a reasonable doubt that it was done in sudden affray or in sudden heat and passion or under provocation ordinarily calculated to excite passion beyond control. It is at once manifest that the latter portion of the instruction would have been erroneous if it had not included the words "beyond a reasonable doubt," since a conviction for manslaughter would not have been authorized unless the jury did believe beyond a reasonable doubt that the cutting was done in circumstances that would constitute that crime.

Complaint is made of instruction No. 3 given under section 239 of the Criminal Code of Practice which provides, "If there be a reasonable doubt of the degree of the offense which the defendant has committed, he shall only be convicted of the lower degree." The first portion of instruction No. 3 was in the usual and approved form but after directing the jury to find the de-

fendant guilty of voluntary manslaughter if they believed beyond a reasonable doubt that he was guilty but had a reasonable doubt as to the degree of the offense, the following words were added, "and fix his punishment as provided for in instruction Number II." It is strenuously argued that these words render the instruction prejudicially erroneous because under the instruction referred to therein the jury was authorized to fix the punishment at death or life imprisonment. The instruction was inaptly drawn and the quoted words were unnecessary but we do not think it was misleading or prejudicial since the jury would necessarily have understood that a verdict for voluntary manslaughter would carry the punishment for that degree of the crime as provided in instruction II.

It is next argued that the commonwealth's attorney committed prejudicial error when in arguing the case before the jury he stated, "Gentlemen of the jury, you know that the defendant was mad, and had malice in his heart at the time deceased walked up to him because of what had already occurred," and also in making some reference to the condition of appellant's hat immediately before the trouble occurred. It is urged that the commonwealth's attorney was alluding to evidence of trouble that appellant had had with his son-in-law prior to the time of the killing and that the court had sustained objection to that evidence. The court had sustained objection to some questions concerning that matter, but Otis Banks, the first witness called by the commonwealth, when asked about appellant's statement concerning the condition of his hat and what was the matter with it, testified that the hat was wrinkled up and appellant and his son-in-law had had a little racket a few minutes before. Objection to this evidence was overruled. Since this evidence had been admitted counsel had a right to refer to it and to draw reasonable inferences arising from that and other evidence. However, if the evidence had been excluded, we would not be authorized to reverse the judgment on the ground of improper argument because it is so clearly manifest that in the proven circumstances it could not have prejudiced appellant's substantial rights in any way or have had any effect whatever in determining the verdict of the jury.

Argument that an alleged statement made by the father of deceased while counsel for appellant was ar-

guing the case was improper and highly prejudicial cannot be considered on appeal because as disclosed by the record the court did not hear the alleged remark and attention was not called to it during the trial nor until after the verdict had been rendered.

What we have said concerning the evidence renders it unnecessary to say much more concerning the last ground assigned for reversal. According to the evidence of a number of witnesses introduced by the commonwealth, including associates of appellant, he without other provocation than a mere prank for which deceased immediately attempted to make amends made a persistent, cruel and deadly attack upon deceased when the latter was unarmed and making no attempt to do him harm, but was backing away and begging that his life be spared. Appellant did not claim that his passions were aroused or that the conduct of deceased in taking off his hat and throwing it on the ground had provoked him but relied solely on the ground of self defense for acquittal. It was for the jury to determine the credibility of the witnesses and the weight to be given their evidence. Woodward v. Commonwealth, 228 Ky. 254, 14 S. W. (2d) 773; Oldham v. Commonwealth, 228 Ky. 307, 14 S. W. (2d) 1065. There is ample evidence to sustain the verdict and it was for the jury to determine the punishment to be inflicted and, since it is within the limits fixed by statute, Kentucky Statutes, sec. 1149, we should not interfere on the ground that it is cruel or excessive. See Fry v. Commonwealth, 259 Ky. 337, 82 S. W. (2d) 431.

Finding no error in the record prejudicial to appellant's substantial rights, the judgment is affirmed.