## Chaney v. Commonwealth.

March 28, 1941.

Woodward, Dawson & Hobson and Fox & Gordon for appellant.

Hubert Meredith, Attorney General, and Wm. F. Neill, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Appellant and thirteen others were charged with violation of Kentucky Statutes, Section 1241a-1, banding for the purpose of alarming, disturbing or injuring other persons, eight subjects being named, among them Marvin Wyatt. Upon severance appellant went to trial, and a jury returned a verdict of guilty, inflicting the minimum penalty, and on appeal it is contended that the court erred:

(a) In refusing offered instructions which appellant insists constituted his defense;

(b) In allowing commonwealth counsel to make reference in argument to testimony, which it is said had been excluded.

Wyatt, a miner of experience in the Hopkins County fields, had worked in the Derby Mine for twelve years. Prior to January, 1939, its operators, due to financial difficulties closed down. They had been operating under a United Mine Workers' contract; Wyatt asserts that he was a member of the organization.

Following the closing Wyatt had been property caretaker. Discussion was had between Wyatt, the miners who had been working, and the owner, as to possibility of beginning operations, which led to a royalty contract under which Wyatt, about January 31, 1939, began cleaning up, and was so engaged on February 2. Wyatt had not contracted with the U. M. W. A., but had employed twenty or more men at $2 per day for clean-

ing up. They had not begun cutting coal. The majority of the employees claimed to be union members.

Wyatt testified that early on the morning of February 2, he started steam in the boiler, and shortly thereafter observed a number of automobiles coming up the road, stopping near his boiler room, and he walked out to the cars. Chaney stepped out of a car and said to him: "All right you scabbing s. o. b., we have come after you," and, as Wyatt relates, put his hand in his right coat pocket, and said, "Scabbing days in Hopkins County are over; get in there and blow the run-off," a recognized signal for "no work that day." Continuing he said: "They said they were going to shoot me; blow my house up and throw me in the shaft." He did not attribute this language to Chaney, but said he was "close up to the men who were in the crowd." Chaney repeated his order, and "stuck something that felt like a gun in my back; followed me into the boiler room," and Wyatt blew the whistle until Chaney said, "that is enough." Others of the party followed into the room.

Wyatt was ordered to "draw the fire," and reached for the rake, which was so hot that he dropped it; he was then kicked and struck several times, and directed to go home. As he started out, three strangers grabbed him and took him away from the "other men," who had pistols drawn on him. He stated that all this happened in the presence of appellant. No employee of Wyatt's was present at the time. Wyatt named as being present the persons jointly indicted, and says there were many in the crowd he failed to recognize. Wyatt said he knew Chaney because he had seen him at labor meetings during the previous twelve months.

Berry, an employe, had started to the mines and met others leaving the plant, who appeared to have been beaten up. He saw some unknown person in the crowd hit his son; Chaney was present and said he didn't "aim for no more scabbing going on in Hopkins County;" Berry was frightened and did not attempt to work. Other employes present identified appellant.

Willet Berry, also an employe, at some distance from the plant met Chaney with five others; some one in the crowd, other than Chaney, asked where he was going. He said he was not going to work, but "they beat the fire out of me anyhow."

Employe Dawson had reached the plant; he saw men standing around, and recognized Underwood, who said, "It looks like you are trying to get my job," and some other man said to him, "pour your water out and get moving." Witness replied that he had never run before, and Underwood said, "You G. d. s.o.b. you'll run this time," and they proceeded to whip him. He recognized Chaney, Miller, two Underwoods and Downey. He said he then went up the railroad and met other employes, and the crowd "tied into us again." Several witnesses testified that a number of the picketing crowd had pistols.

The foregoing exemplifies the tenor of evidence by commonwealth's witnesses, including that of six or eight others than those named. They estimated the crowd about the mine from 30 to 75 persons, colored and white, placing them between the boiler room and tipple. A number of witnesses recognized Chaney in the crowd at this point, and identified him as being in the crowd at points where others testify they were assaulted.

Appellant testified that he had been a miner, but at the time was organizer for the U. M. W. A. in District No. 23, which included Hopkins County, having a local unit holding meetings in a hall in Madisonville, where appellant was on January 1, 1940, and attended a meeting that night. Some of those present who had worked at Derby said other men were taking their jobs, and suggested requesting them "not to continue work until a contract was signed up." Davenport was spokesman, followed by Woods and appellant. Suggestion was made to picket three mines on February 2. It was not then agreed which mine would first receive attention.

The theme of discussion was "that the men under the law had a right to peacefully picket, which meant to go and talk peaceful, and ask them not to enter the mines until the contract with the U. M. W. A. had been signed. We had to protect our organization to that extent, but that if they went out with weapons and unlawfully picketed, the U. M. W. A. would let them paddle their own canoes."

Appellant remained in Madisonville, and agreed to meet with the men "back at the hall," where they met about 5:00 a. m., February 2. About 18 showed up, though a greater number had pledged to be present, and

agreed to first visit Derby. Appellant in his own car, joined four other cars, occupied by a majority of those indicted. On the way to the plant appellant says he heard a whistle blow in the direction of the Derby. Arriving he and others parked on the road near a bridge 75 to 100 feet from the boiler room, and he says no car or person in the convoy crossed the bridge.

He saw a number of unrecognized persons "scattered between the tipple and the boiler room, and up and down the railroad track." He got out of his car and walked up to the bridge, and was positive that he did not talk to any person, other than his companions, that morning; he never saw Wyatt, or had word with him, and no one of his party went into the boiler room, or assaulted Wyatt. He also says no whistle was blown while they were there; that neither he nor any of his party was armed. He did not go up the railroad; did not address the attributed language to any one, and was not in speaking distance of any employe. He saw no one coming to work "to talk to, so we left," all going back to Madisonville in a group.

An array of witnesses, among them those indicted, and all who were in the party which left the hall, as a whole corroborated appellant's testimony. Four of the co-defendants said they were near the mine on that morning, but did not leave the hall with appellant's crowd, and had no arrangement to meet there or elsewhere. Stanley Davenport and Miller said they were not at the scene, and are corroborated.

With this statement of the proof, which to say the least is somewhat conflicting, we take up ground (b): Wyatt, and witnesses testifying for him, identified Stanley Davenport (indicted) as being one of the aggressors. Stanley said he was working that morning at the Biven's coal mine. He was corroborated by other witnesses; one was Buchannon, and when on the stand the county attorney said:

"I will ask you whether you made this statement to Martin Wyatt about a month after this occurrence at the time the mines were idle, that Stanley Davenport came to work that day about ten o'clock in the morning, and that he talked to you and wanted you to say that he came to work earlier than that—did

you make that statement?'' Buchannon answered, ''No, sir.''

Wyatt was brought back and contradicted Buchannon. On motion of appellant the court advised the jury that Wyatt's testimony was to be considered only as bearing on the credibility of Buchannon. In argument to the jury one of counsel for the commonwealth stated:

''If Stanley Davenport was not present at the time and place charged in the indictment, why did he go down there and ask Buchannon to say that Davenport was at the Biven's mine at the time of the occurrence?''

Counsel objected and the court overruled the motion to admonish the jury to disregard the statement. It is argued that the remark was highly prejudicial, and in support cites the case of Nolan v. Com., 261 Ky. 384, 87 S. W. (2d) 946. A reference thereto demonstrates that the remarks therein went far beyond the limits of propriety; not at all a measure for the objection here.

Wyatt was positive that he had recognized Davenport; the contrary evidence went only to credibility, it was not substantive, as counsel correctly says, but it was before the jury, and the prosecuting officer had the right to draw inference that Davenport was not telling the truth. We had a like question in Holbrook v. Com., 249 Ky. 795, 61 S. W. (2d) 644, and held no reversible error. We said in McHargue v. Com., 239 Ky. 23, 38 S. W. (2d) 927, 930, that the commonwealth's attorney must have such latitude as ''would enable him to fairly present the evidence and all reasonable deductions therefrom,'' and that the statement of the attorney ''amounted to no more than a statement of the inference which counsel thought he could deduce from the evidence. * * *· It cannot be said, however, that this statement had any effect whatsoever on the result of the trial.'' Our conclusion is that the error, if such, was harmless. Wood v. Com., 246 Ky. 829, 56 S. W. (2d) 556; Hanna v. Com., 242 Ky. 584, 46 S. W. (2d) 1098; Hendrickson v. Com., 235 Ky. 462, 31 S. W. (2d) 712; Combs v. Com., 273 Ky. 787, 117 S. W. (2d) 1000; Philpot v. Com., 205 Ky. 636, 266 S. W. 348.

The contention that the court did not give the whole law of the case arises on the fact that appellant tendered to the court two instructions, ''A'' and ''B,''

which the court refused. Instruction "A" in form and substance followed an instruction which was suggested by us in the case of Com. v. Compton, 259 Ky. 565, 82 S. W. (2d) 813. Comparison will show slight and immaterial difference. Instruction "B" offered, would have directed the jury to return a favorable verdict if they should believe that the assault on Wyatt was by some other or another group, of which defendant was not a member, and with which he had not banded for the purpose of alarming or injuring Wyatt or others. Appellant was not indicted for injuring another person. Kentucky Statutes, Section 1241a-3.

It is urged that since appellant had produced proof to the effect that it was understood by him and those in company with him, that the party should do, and did nothing more than peaceful picketing, and the assaults were by a disconnected crowd, the court erred in not specifically presenting the proposed theories.

The court giving correct definition to the words "conspire" and "band together," and the reasonable doubt instruction, further correctly instructed the jury as to its duty if they should believe from the evidence that appellant, and his co-indictees, conspired or banded together for the purpose of intimidating Wyatt and others named in the indictment. The court then gave No. 3, as follows:

> "The court further instructs you that if you shall believe from the evidence that Arthur Chaney joined the crowd, and was present on the occasion, solely for the purpose of peaceably persuading the miners at the Derby mines not to work until the operator thereof had entered into an agreement with the United Mine Workers of America to operate that mine under a contract with it, and that he did not join the crowd and was not present on the occasion in question in pursuance of any confederation, or banding to intimidate, alarm, disturb, or injure Marvin Wyatt, (naming others) or any of them, you will find the defendant not guilty."

These "theories of defense" bordered closely on a plea of alibi, and we have held that where the defense is alibi, there is no necessity for giving an instruction on that phase. Instruction No. 1 and the reasonable doubt instructions sufficiently presented to the jury the ques-

tions of guilt or innocence; the only issues in this case. Wallace v. Com., 187 Ky. 775, 220 S. W. 1051; Edmonds v. Com., 204 Ky. 495, 264 S. W. 1100.

In Morgan v. Com., 242 Ky. 116, 45 S. W. (2d) 850, 851, we said:

"Ordinarily, and in the general run of cases, the rights of a defendant in a criminal prosecution are completely protected by the giving of general instructions under a plea of not guilty, and that is universally so where defendant denies the facts constituting the offense with which he is charged. But where he admits such facts, and then interposes a legal excuse therefor having legal effect to exonerate him from criminal intent, his excuse should be submitted to the jury in concrete form."

Referring to the Morgan case, supra, in Literell v. Com., 266 Ky. 235, 98 S. W. (2d) 909, 911, citing the rule and exceptions, we said:

"The rule under which that right is given, as approved in the cited domestic cases, is strictly analogous to the right of a defendant in a prosecution for homicide, or the infliction of other personal injuries, to interpose his right of self-defense when he admits the commission of the acts with which he is charged. In such circumstance he admits the doing of the acts, but relies as an excuse therefor, on his right of self-defense * * *. It is entirely unlike the situations where we have refused to direct or approve concrete instructions on alibis, and other defenses of a similar nature, wherein the accused on trial denied altogether the commission of the acts constituting the offense for which he was being prosecuted."

A perusal of the cases cited in support by counsel will demonstrate the distinction, and show that they do not conflict with the rule. In further exemplification of the correct rule, we refer to Richardson v. Com., 268 Ky. 741, 105 S. W. (2d) 616; Gibson v. Com., 204 Ky. 748, 265 S. W. 339, and cases therein cited.

We might dismiss appellant's contention in respect to the court's failure to give the jury tendered instruction "A" by applying the rule supra, since appellant insists that he agreed with others to (but did not) use

peaceful means to have the miners desist until there should be a contract with the association, a matter which had not theretofore been proposed to Wyatt. It may be doubted whether the facts developed justified a giving of the tendered instruction, or such as was suggested in the Compton case, supra, in which the facts differ.

However, we need not undertake to distinguish the Compton case from the instant one. It may be that the facts here on close analysis were of such similar effect as to authorize an instruction presenting not so much a matter of defense, as undertaking to say to what extent the rights of members of a labor organization might go in protecting their interests. This is no longer an open question, according to our own decisions, and the very recent case of Blandford et al. v. Press Publishing Company, ... Ky. ..., ... S. W. (2d) ..., decided February 28, 1941, and in which we quoted from the recent Supreme Court opinion in American F. of L. v. Swing, February 10, 1941, 61 S. Ct. 568, 85 L. Ed. ..., which dealt with what it termed a "secondary boycott." However, we may remark that if, as the jury apparently believed, the testimony of Wyatt and his witnesses truly stated the facts, this case would fall in line with the Milk Wagon Drivers Union v. Meadowmoor Dairies opinion, 61 S. Ct. 552, 85 L. Ed. ..., delivered by the Justice who wrote the Swing case on the same day.

It may be admitted for the purpose of argument that if appellant was entitled to the instruction offered, the form suggested or tendered, would have been the better. However, the sole question here is whether or not appellant was prejudiced by the failure to give the better form.

We have quoted verbatim the instruction given, and comparison shows it to have been taken from Newton v. Com., 244 Ky. 41, 50 S. W. (2d) 18. While the instruction tendered, as the one noted in the Compton case, was perhaps elaborated or amplified, when we measure it by the instruction in the Newton case, we conclude that No. 3 as given by the court preserved to appellant every right of free speech and action vouchsafed him and did not limit "the generous scope that must be given to the guarantee of free speech."

We need not repeat the instruction, but it substantially advised the jury that appellant had the right to

be present on the occasion for the purpose of peacefully persuading the miners, but did not have the right to be present in pursuance of a conspiracy to alarm, intimidate or injure another. According to his proof, as we indicated, this was as much, or perhaps more, than he was entitled to have given in his behalf, since he neither persuaded, peacefully or otherwise, nor did anything in attempting to effectuate his and his companions' purpose as expressed at the meeting two nights prior to the visit to the mine.

This case lacks many of the elements present in cases wherein the courts have guarded the traditional sacred rights of free speech. No strike had been called in the area over which the appellant was in charge, or in Hopkins County. There is no evidence showing that Wyatt had ever been approached for the purpose of entering into a contract. Wyatt and many of his employes were members of the union. There is no showing that the employes who were non-members had ever been approached to join. Such action as appears to have been taken was precipitate. Section 340 of the Criminal Code of Practice provides:

"A judgment of conviction shall be reversed for any error of law appearing in the record when, upon consideration of the whole case, the court is satisfied that the substantial rights of the defendant have been prejudiced thereby."

We have given the matters complained of careful consideration, but find ourselves unable to reach the conclusion that the appellant was not afforded a fair and impartial trial, or that upon consideration of the whole case, appellant's rights have been prejudiced.

Judgment affirmed.