**Kelly MOSS, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

May 22, 1959.

Rehearing Denied March 25, 1960.

 

Odie Duncan, Henderson, Richard A. Robertson, Robertson & Robertson, Owensboro, for appellant.

Jo M. Ferguson, Atty. Gen., William L. Brooks, Asst. Atty. Gen., for appellee.

MONTGOMERY, Chief Justice.

Kelly Moss received a death sentence for the murder of Charles Abbitt. The bases urged for reversal are: (1) Admission of incompetent evidence; (2) insufficiency of the evidence; and (3) improper denial of a new trial.

Charles Abbitt was found dead in the kitchen of his home in Henderson on November 6, 1957. Eight ribs in his left side were broken. The bridge of his nose and the hyroid (sic) bone (hyoid cartilage) were fractured. The head was extensively bruised, with multiple lacerations of the scalp and extensive hemorrhage beneath the scalp and in the cranial cavity in and beneath the covering of the brain. There were bruises and lacerations on various parts of the body. The immediate cause of death was a hemorrhage inside the skull resulting from injuries to the head.

Abbitt was about five feet, three and one-half inches tall and weighed 135 to 145 pounds. He was 74 years of age and had been in declining health. He had married the mother of Kelly Moss on August 13, 1957. On the evening he was killed, Abbitt had taken his wife to church services and returned home alone.

Kelly Moss was a much younger man than Abbitt. He was six feet, two inches in height and weighed 220 pounds. He had been released from the penitentiary at Eddyville on September 22, 1957, on completion of service of his fourth felony sentence. After his release, Moss had traveled about the country before returning to Henderson on November 5, 1957.

The next morning he visited his mother at the home where she lived with Abbitt. He left after the noon meal. Moss declined an invitation to stay overnight with the Abbitts, giving as his reason that Abbitt did not want him. He admitted that he "was drinking a little," but said, "There was a quite a bit of ill feeling toward me and he (Abbitt) didn't want me to come around and I didn't intend to come around no more."

That evening Moss returned to Abbitt's home in a cab. There was testimony that Moss had been "drinking" and had the odor of alcohol on his breath. When Moss arrived at Abbitt's, he told the cab driver that he would have to go into the house for the money with which to pay the 50–75¢ cab fare. The driver followed Moss to the door. When Moss knocked, Abbitt "pulled the blind back," "cracked the door" about six or eight inches, and answered, "She is not here." Moss forced his way into the house, saying that it was his "dam house and that he'd come in when he got ready." The cab driver remained outside for a few minutes and in the cab four or five minutes more before leaving.

Moss' version of what occurred is that he entered at the invitation of Abbitt to see for himself if his mother was present. While he was looking around, Moss said, Abbitt locked the door. He claimed that they got into an argument in which Abbitt accused him of "trying to bust my mother and him up, trying to get my mother to divorce him," and in which Abbitt said "he was going to salt me away." Moss admitted that he had been trying to get his mother to divorce Abbitt.

To sustain his plea of self-defense, Moss said that Abbitt attacked him with an open knife, threatened to "cut (his) Goddam head off" and "slashed at my throat." He said Abbitt had some keys and an unopened

knife in his other hand. Moss testified that it was necessary in his defense to kick Abbitt three times as Abbitt attacked him. He said Abbitt's head hit on the table and again on the kitchen sink. Abbitt fell under the sink. Moss denied striking Abbitt with either of two pieces of metal water pipe, one of which was found to have had blood stains on it. A pathologist who performed an autopsy gave the cause of death as "subdural hemorrhage due to blunt forced trauma."

Moss was apprehended the following day some 14 miles away huddled on the floor of a "privy" behind a colored country church. Two knives were found in the yard where Moss was arrested, which, Moss said, were used by Abbitt in attacking him. When told that Abbitt was dead, Moss dropped his head and said, "I am in a world of trouble, ain't I" and "Well, that's one of the worst things I have ever done."

Appellant urges that prejudicial evidence as to another offense was admitted.

On cross-examination, Moss was asked:

"Do you remember the time after you got back from the penitentiary that Mr. Abbitt drove you out to the cemetery, didn't you make him drive you out there by sticking a gun in the back of his neck?"

Moss denied having gone, but admitted having been arrested for being drunk. His mother also was asked on cross-examination concerning this incident. Moss was released from the penitentiary about 45 days prior to the killing.

In Spencer v. Commonwealth, 107 S.W. 342, 344, 32 Ky.Law Rep. 880, evidence of a difficulty between the appellant and the deceased which occurred two months before the homicide was held to be admissible "to prove ill will or malice on appellant's part toward deceased * * *." Again, in Lewis v. Commonwealth, 312 Ky. 191, 226 S.W.2d 934, testimony concerning the ac-

cused's conduct and statements made about two months prior to the fatal shooting was held competent to show motive and state of mind. See also Perkins v. Commonwealth, 227 Ky. 129, 12 S.W.2d 297; Woodard v. Commonwealth, 228 Ky. 254, 14 S.W.2d 773; Carter v. Commonwealth, 258 Ky. 807, 81 S.W.2d 883.

■ The evidence complained of as being prejudicial was properly admitted as an exception to the general rule, under which appellant contends that it is inadmissible. It showed appellant's state of feeling toward Abbitt and is admissible for the purpose of showing who commenced the difficulty. Shepperd v. Commonwealth, Ky., 322 S.W.2d 115; Roberson's New Kentucky Criminal Law and Procedure, Second Edition, Section 434, page 575.

■■ Appellant contends that the evidence is insufficient to sustain the verdict, in that it fails to show malice. "Malice aforethought" has been defined as a predetermination to do the act of killing without legal excuse, and it is immaterial how suddenly or recently before the killing such determination was formed. McHargue v. Commonwealth, 231 Ky. 82, 21 S.W.2d 115. See Turner v. Commonwealth, 167 Ky. 365, 180 S.W. 768, L.R.A.1918A, 329, for a history and explanation of the phrase.

A reading of the testimony in this case reveals the ill will of Moss toward the deceased because of his marriage to Moss' mother. This feeling was expressed soon after he was released from prison and again on the day of the killing. The circumstances of the killing and the nature of the injuries inflicted, while not conclusive, are shockingly indicative of strong ill will. Appellant's statements after being arrested show a realization of wrong doing. The circumstances of this case are such that every element of murder has been sufficiently proved and the evidence fully sustains the verdict. Byrd v. Commonwealth, Ky., 283 S.W.2d 191. It should be noted that this suggested error has been

considered even though no motion for a directed verdict was made at any stage of the trial. Bowman v. Commonwealth, Ky., 290 S.W.2d 814.

■ The final ground urged for reversal is that the trial court erred in denying appellant's motion for a new trial based on newly discovered evidence in the form of the affidavit of Woodrow Moss, appellant's brother. Appellant has been confined in the Henderson County Jail since November 8, 1957. He was tried on May 22 and 23, 1958. The affidavit of his brother was presented on June 19, 1958. In substance, Woodrow Moss stated that he had watched the altercation between appellant and deceased through the window of the house; that he saw deceased attack appellant with his knives and saw appellant repel him; that he thought they were drunk, and when appellant left, so did he, thinking no more about it; that he left town that same night; and "it was almost two months later that I ever knew that Charles Abbitt was dead. It was might near 1958 before I knew Kelly was charged with the murder."

Counter-affidavits of the Commonwealth's attorney and sheriff were filed, from which it appears that Woodrow Moss was confined in the same jail on December 23, 1957, and again from March 4 to 14, 1958. He again was in the same jail from June 4 to 9, 1958, after appellant's conviction.

The statements of Woodrow Moss are highly improbable. Despite his knowledge of appellant's trouble, he failed to come forward and testify at the trial or until some time after the trial. There was a complete lack of diligence on the part of appellant since he had an opportunity to learn from his brother any helpful information while Woodrow was in the same jail twice prior to the trial. The affidavit filed fails to show when Woodrow informed his brother of his knowledge or why he did not disclose it prior to the trial after he learned appellant was in trouble. Under these circumstances, the statements contained in the affidavit are of little or no probative value. The trial court was justified in denying the motion for a new trial on the ground of newly discovered evidence.

In fairness to the counsel who have briefed this case on appeal for appellant, it should be noted that they were not the trial counsel.

Judgment affirmed.